452 A.2d 844

**COMMONWEALTH of Pennsylvania**

v.

**Charles STRICKLAND, Appellant.**

Superior Court of Pennsylvania.

Submitted April 6, 1982.

Filed Nov. 19, 1982.

Petition for Allowance of Appeal Denied Feb. 22, 1983.

518

Christopher G. Bokas, Philadelphia, for appellant.

Robert B. Lawler, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before HESTER, CAVANAUGH and CIRILLO, JJ.

CIRILLO, Judge:

This is an appeal from an Order of the Court of Common Pleas of Philadelphia County, denying the appellant's Petition for Relief under the Post Conviction Hearing Act.[1]

On April 5, 1971, the appellant, Charles Strickland, was arrested by Philadelphia police and charged with the murder of one George Smith. The appellant confessed the murder to police shortly after his arrest. Subsequently, the appellant's trial counsel, A. Benjamin Johnson, filed a Motion to Suppress the confession as involuntary. On September 27,

1. Act of January 25, 1966, P.L. (1965) 1580, § 1; 19 P.S. §§ 1180–1 et seq.

1971, following an evidentiary hearing, the motion was denied by the Honorable James T. McDermott.

The appellant's trial before the Honorable Gregory G. Lagakos and a jury commenced on June 23, 1972. At the trial the Commonwealth introduced the appellant's confession as well as a letter written by the appellant to his uncle, in which he expressed concern about the police locating a .25 caliber gun. On July 7, 1972 the jury returned a verdict of guilty of murder in the first degree.[2] Motions for a New Trial and in Arrest of Judgment were filed and argued before a court en banc. These post-trial motions were denied and thereafter the court imposed a sentence of life imprisonment upon the appellant.[3]

The appellant, represented by trial counsel, filed a direct appeal to the Supreme Court of Pennsylvania.[4] That Court found that the trial court had employed an improper standard in determining whether the appellant had standing to contest the admissibility of the self-incriminating letter. Therefore, the Supreme Court remanded the case to the trial court for an evidentiary hearing consistent with its opinion. *Commonwealth v. Strickland,* 457 Pa. 631, 326 A.2d 379 (1974).

In accordance with the mandate of the Supreme Court, an evidentiary hearing was held before the Honorable David N. Savitt on January 17, 1975. The appellant was represented at the hearing by Mr. Johnson. On January 23, 1975 Judge

2. Act of December 6, 1972, P.L. 1482, No. 334, § 1, as amended by the Act of April 28, 1978, P.L. 84, No. 39, § 1; 18 Pa.C.S.A. § 2502(a).

3. Act of December 6, 1972, P.L. 1482, No. 334, § 1, as amended by the Act of March 26, 1974, P.L. 213, No. 46, § 2; 18 Pa.C.S.A. § 1102.

4. The Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673, art. 11, § 202(1); 17 P.S. § 211.202(1), was the source of the Supreme Court's jurisdiction. That Act has since been repealed and Supreme Court jurisdiction in a matter such as the present one is now governed by the Act of July 9, 1976, P.L. 586, No. 142 § 2, as amended by the Act of October 5, 1980, P.L. 693, No. 142, § 216(c); 42 Pa.C.S.A. § 722.

Savitt denied the appellant's Motion to suppress the letter. No appeal was taken from that decision.

On December 6, 1979 the appellant, represented by Joel S. Moldovsky, filed a Petition for Relief under the Post Conviction Hearing Act. On May 28, 1981, following a hearing before the Honorable Edward J. Blake, relief was denied. New counsel was appointed and this appeal followed.

The appellant's first contention on appeal is that the assistant district attorney made prejudicial and improper remarks to the jury during his closing argument.

Our Supreme Court has stated:

> Even where the language of the prosecuting attorney is intemperate, uncalled for and improper, a new trial is not required unless "its unavoidable effect would be to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant, so that they could not weigh the evidence and render a true verdict."

*Commonwealth v. Burton,* 491 Pa. 13, 22, 417 A.2d 611, 615 (1980), *Commonwealth v. Stoltzfus,* 462 Pa. 43, 61, 337 A.2d 873, 882 (1975).

██ Specifically, the assistant district attorney remarked in his closing argument to the jury:

> And this human life wasn't taken as in sickness. It was taken by a self-appointed executioner sitting in this courtroom. He has judged and decreed who is going to live and who is going to die.

This reference to the appellant as an "executioner", though improper, was supported by the evidence and was not so prejudicial as to make it impossible for the jury to render a true and proper verdict. *See: Commonwealth v. Fultz,* 478 Pa. 207, 386 A.2d 513 (1978); also, *Commonwealth v. Brown,* 490 Pa. 560, 417 A.2d 181 (1980).

██ The assistant district attorney further stated in his closing argument at trial:

> I'll tell you at least my feelings as to motive... He was probably dealing in drugs at the time this homicide took place. And what happened was he probably sold some bad

narcotics to George Smith... Maybe he did go back to this defendant's grandmother's apartment. Maybe he did say something about drugs. This defendant saw him on the street a couple months later. Nobody threatens anybody, so he shot him.

The prosecutor is permitted to argue facts of record and legitimate inferences therefrom. *Commonwealth v. Glass,* 486 Pa. 334, 405 A.2d 1236 (1979). Appellant's counsel, in his closing argument, devoted considerable time to the issue of drugs, including the relationship of drugs to the instant murder. The assistant district attorney's remarks were merely a rebuttal to opposing counsel's statements, and therefore were proper. *See: Commonwealth v. Rigler,* 488 Pa. 441, 412 A.2d 846 (1980).

■ Moreover, after objection by defense counsel, the trial judge immediately cautioned the jury that their recollection of the evidence would control. Later, the court instructed the jury to disregard anything they may have heard about drugs. It is well-settled that juries can be trusted to follow the trial court's instructions. *Parker v. Randolph,* 442 U.S. 62, 75, fn. 7, 99 S.Ct. 2132, 2140, fn. 7, 60 L.Ed.2d 713 (1979). Thus, the cautionary instructions of the trial judge were sufficient to assure the appellant a fair and impartial trial. *E.g., Commonwealth v. Rawls,* 276 Pa.Super. 89, 419 A.2d 109 (1980).

■ The prosecutor also made the following comment in his address to the jury:

You have Louise Stratford who ... points out the defendant as the one that opened the door, made a comment, fired the shot that killed George Smith, and came outside and saw nothing. I don't think there's any problem as to the guilt of the defendant.

The appellant contends that this statement constituted error because it conveyed the notion that Louise Stratford saw the appellant fire a shot. However, the trial judge corrected any misapprehension that the jury might have had when he told the jury that Louise Stratford had not seen the appellant fire the fatal shot and, in fact, there were no eyewit-

nesses. *See: Commonwealth v. Rawls,* supra; *Commonwealth v. Rough,* 275 Pa.Super. 50, 418 A.2d 605 (1980).

We therefore conclude that this argument of the appellant is without merit.

The appellant next contends that the lower court improperly admitted an incriminating letter that he wrote to his uncle while he was incarcerated, awaiting trial in the instant case. In the letter the appellant stated, "... I cannot afford to have that '25 automatic in the wrong hands which would be the police." [5] Police confiscated the letter from the uncle's apartment as they searched it, pursuant to a warrant, for narcotics. The appellant contends that the letter should have been suppressed because the warrant did not adequately describe the premises to be searched or items to be seized, was stale when executed, and was not issued upon probable cause.

In the case of *Commonwealth v. Davis,* 491 Pa. 363, 421 A.2d 179 (1980), our Supreme Court stated the following:

When ruling on suppression motions, the suppression court is required to make findings of fact and conclusions of law as to whether evidence was obtained in violation of the defendant's constitutional rights, Pa.R.Crim.P. 323(i),[6] and must determine whether the Commonwealth has established by a preponderance of the evidence that the challenged evidence is admissible. Pa.R.Crim.P. 323(h).[7] On review, this Court must "determine whether the record supports the factual findings of the court below and the

5. The decedent was killed by a bullet fired from a .25 caliber gun.

6. Pa.R.Crim.P. 323(i) provides the following:
   At the conclusion of the hearing, the judge shall enter on the record a statement of findings of fact and conclusions of law as to whether the evidence was obtained in violation of the defendant's rights, or in violation of these rules or any statute, and shall make an order granting or denying the relief sought.

7. Pa.R.Crim.P. 323(h) provides the following:
   The Commonwealth shall have the burden of going forward with the evidence and of establishing that the challenged evidence was not obtained in violation of the defendant's rights. The defendant may testify at such hearing, and, if he does so, does not thereby waive his right to remain silent during trial.

legitimacy of the inferences and legal conclusions drawn from those findings." (citations omitted)

491 Pa. at 368, 421 A.2d at 181. The Court in *Davis* went on to hold that credibility determinations are the sole province of the fact finder, and the fact finder is free to believe all, part of, or none of the defendant's testimony. *Id.*

■ The warrant in question authorized the search of "707 Jessup Place, 3rd floor apt., right side of hall", occupied by "a Negro male known as Rivet." [8] The record indicates that the search comported with the information set forth in the warrant. Thus, it is apparent that the warrant description was not unduly vague so as to render the warrant invalid.

■ Likewise, even though the warrant did not specify that a letter was to be seized, the letter was properly confiscated in the course of the search. Judge Savitt found that the police were properly in the uncle's apartment and the letter was lying open on a bureau top in plain view. Thus, under the "plain view" doctrine, the letter did not require a separate warrant before it could be expropriated. *Harris v. U.S.,* 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968), *Commonwealth v. Mitchell,* 489 Pa. 537, 414 A.2d 1021 (1980).

■ The appellant contends that the warrant was stale, and therefore invalid in that there was an interval of seven days between its issuance and execution. However, the appellant's failure to raise this allegation at any time prior to this appeal constitutes a waiver under the Post Conviction Hearing Act, absent a showing of "extraordinary circumstances" justifying the failure.[9] The appellant has not alleged the existence of any such extraordinary circumstances and this claim is therefore waived. *Commonwealth v. Fox,* 476 Pa. 475, 383 A.2d 199 (1978).

■ The suppression court also found that there was ample probable cause for the issuance and execution of the

8. The appellant's uncle, Robert Johnson, was also known as "Rivet".

9. Act of January 25, 1966, P.L. (1965) 1580, § 4; 19 P.S. § 1180—4(b).

warrant. An affidavit, based on an informant's tip, established that the appellant's uncle was engaged in a continuous criminal activity, the sale of narcotics. The uncle's illicit enterprise suggested that at any time he probably would have drugs in his apartment. The information concerning the on-going operation supports the conclusion that probable cause existed for the warrant. We find that the warrant was constitutionally valid and that the incriminating letter was properly seized and admitted into evidence.

The appellant further contends that his confession should have been suppressed due to psychological coercion and an impermissible pre-arraignment delay, in violation of Pa.R. Crim.P. No. 118,[10] and *Commonwealth v. Futch,* 447 Pa. 389, 290 A.2d 417 (1972).

A confession will be deemed voluntary if, considering the totality of the circumstances, the Court finds that it was the product of an essentially free and unconstrained choice. *Commonwealth v. Eackles,* 286 Pa.Super. 146, 151, 428 A.2d 614, 617 (1981). The appellant arrived at the Police Administration Building at 10:25 A.M., at which time he indicated a willingness to cooperate. He did not give a formal statement to police until 9:25 P.M. However, virtually all of the delay was justified for reasons approved by our courts.[11] Also, the record reveals that the appellant was not questioned constantly without respite, was apprised of his constitutional rights, repeatedly made voluntary disclosures, was alert and responsive to questions and appeared quite calm. Under the circumstances, we find that the

10. Pa.R.Crim.P. No. 118 adopted January 31, 1970, effective May 1, 1970; renumbered as Rule 130 and amended September 18, 1973, effective January 1, 1974; amended December 14, 1979, effective April 1, 1980.

11. The delay included transporting and processing the appellant, a period of 5 hours and 50 minutes for the administration of polygraph tests, 40 minutes for two meals, and 2 hours and 45 minutes for interviews. The unexplained delay of less than 2 hours was not an "unnecessary delay" under *Futch.* *See: Commonwealth v. Hitson,* 482 Pa. 404, 393 A.2d 1169 (1978); *Commonwealth v. Young,* 460 Pa. 598, 334 A.2d 252 (1975).

confession was not coerced or obtained after an unnecessary delay, and therefore was properly admitted.

The appellant also contends that he was effectively denied his right of appeal. The P.C.H.A. Court specifically rejected this claim of the appellant, finding that he had knowingly and voluntarily waived his appellate rights. This finding involved a credibility determination and is amply supported by the record.[12] We, therefore, find this allegation to be without merit. *E.g. Commonwealth v. Lutz,* 492 Pa. 500, 424 A.2d 1302 (1981).

Finally, the appellant contends that he was denied his right to effective assistance of counsel in this matter. Counsel is presumed to be competent and the burden is on the defendant to show otherwise. *Commonwealth v. Garcia,* 478 Pa. 406, 387 A.2d 46 (1978). So too, counsel will not be deemed ineffective for failing to pursue a meritless claim. *Commonwealth v. Barren,* 273 Pa.Super. 492, 417 A.2d 1156 (1979). We have found the issues raised by the appellant in this appeal to be without merit. Therefore, trial counsel was not ineffective for failing to pursue them.

Additionally, we note that the appellant waited almost five years from the time Judge Savitt rendered his decision in this case, until he filed a Petition for post-conviction relief. A lapse of time in filing a P.C.H.A. Petition is a factor in assessing its merit. *Commonwealth v. Alexander,* 495 Pa. 26, 432 A.2d 182 (1981); *Commonwealth v. Ferguson,* 257 Pa.Super. 497, 390 A.2d 1347 (1978).

Moreover, this Court has recently stated, "Ineffective assistance of counsel has become the last ditch ploy of defendants in criminal cases and should not be encouraged." *Commonwealth v. Alberts,* 285 Pa.Super. 10, 12, 426 A.2d 678, 679 (1981).

12. The record indicates that A. Benjamin Johnson, appellant's trial counsel, told the appellant and his family that he would not perfect the appeal because funds were still due him from his prior representation of the appellant in this case. Further, the appellant knew he had a right to court-appointed counsel but did not seek such assistance in perfecting his appeal.

Accordingly, we affirm the Order of the Court below. Order affirmed.

CAVANAUGH, J., files a concurring opinion.

CAVANAUGH, Judge, concurring:

I concur in the result reached by the majority because I do not feel that appellant has set forth any ground which would entitle him to the relief requested.

I strongly disagree, however, with the majority's statement that the record amply supports the PCHA Court's finding that appellant knowingly and voluntarily waived his appellate rights. Id. at 849. The record does not support such a finding. In fact, the testimony presented at the PCHA hearing clearly indicates that appellant and his family reasonably believed, until 1977, that appellant's trial counsel, Benjamin Johnson, had appealed from the lower court's determination following the January 23, 1975 remand hearing.

Appellant testified at the PCHA hearing as follows:

Q. When the remand hearing was over on January 23, 1975 the Judge found facts against you and made reference to the right of appeal. What if any discussion did you have with Mr. Johnson about that appeal?

A. Well, after Judge Savitt made his ruling Ben Johnson said to me that he would appeal the case.

Q. Back to where?

A. To the Supreme Court, yeah.

Q. There was never any question as to whether or not you wanted him to or if he would agree to?

A. No, that's the only thing that cooled me out, my composure. He said he was going to appeal it to the Supreme Court.

N.T. March 19, 1980 at 100–01. And on cross-examination:

Q. Sir, you said after the hearing before Judge Savitt, after the hearing on January 23rd, Mr. Johnson told you that he was going to appeal.

A. Yes.

Q. Did Mr. Johnson say at that time you would have to pay him any more money?

A. No money was mentioned.

Q. No money was mentioned?

A. No.

N.T. March 19, 1980 at 115–16.

Between 1975 and 1977, appellant wrote "a couple of letters" to Mr. Johnson inquiring as to the status of his appeal, but the letters were not answered. Finally, he wrote directly to the Pennsylvania Supreme Court. The Supreme Court prothonotary informed him, by way of a letter dated August 24, 1977, that there was nothing pending in the Supreme Court on his behalf. Appellant then asked his father and his fiancée, Debbie Seals, to visit Mr. Johnson and find out what was being done on his case. Mr. Johnson informed appellant's father that he was still owed $1200 for work already performed and that he would not do anything further on the case until that money was paid.

On August 1, 1978, Debbie Seals paid Mr. Johnson $1200 in cash and was given a receipt which stated that the money was "for services rendered, and to proceed to the Supreme Court."

In July of 1979, appellant again wrote to the Supreme Court. Again, he was informed, by way of a letter dated July 12, 1979, that there was nothing pending on his behalf in the Supreme Court. In October 1979, appellant retained new counsel, who filed the PCHA petition which is the subject of this appeal.

Nothing in Mr. Johnson's testimony contradicts the testimony given by appellant, his father, and his fiancée. Mr. Johnson testified as follows:

Q. Do you recall following that hearing, which occurred in 1975, whether or not Mr. Strickland asked you to resubmit his case for appeal to the Supreme Court?

A. *Well, I don't think there's any question that Mr. Strickland wanted me to resubmit his case.*

Q. He did want you to?

A.   Yes.   I think that during that period of time Mr. Strickland's father had hired me and he was unavailable. There was already some funds due me still from my working the appeal and the hearing.   I think it was approximately $1200 which was ultimately paid to me and I said that I could just not afford to go· back before the Supreme Court on my own unless I received some funds and there were no funds available at that time.

Q.   Did you convey that to Mr. Strickland following the hearing before Judge Savitt?

A.   *I don't have any actual recollection of doing so.*

Q.   But *at some point* it was conveyed to him or his family that you were not going to prosecute the appeal because funds were due you?

A.   Right.

N.T. March 24, 1980 at 140–41 (emphasis added).

Mr. Johnson's testimony is that appellant was informed *at some point* that his appeal would not be pursued until Mr. Johnson was paid.   Unfortunately, "some point" was apparently in 1977, long after the period for filing an appeal had expired.   Appellant clearly did not knowingly and voluntarily waive his appellate rights.