461 A.2d 828

**COMMONWEALTH of Pennsylvania**

**v.**

**Vincent COURTS, Appellant.**

Superior Court of Pennsylvania.

Submitted Jan. 27, 1983.

Filed June 3, 1983.

John Francis Lyons, Harrisburg, for appellant.

William A. Behe, Deputy District Attorney, Harrisburg, for Commonwealth, appellee.

Before WICKERSHAM, CIRILLO and WATKINS, JJ.

CIRILLO, Judge:

This is an appeal from the Order of the Court of Common Pleas of Dauphin County, dated September 30, 1981, denying the appellant's supplemental petition for relief under the Post Conviction Hearing Act (PCHA).[1]

On March 24, 1974, appellant was apprehended by three members of the Harrisburg Police Department pursuant to

1. Act of January 25, 1966, P.L. (1965) 1580, § 1; 19 P.S. §§ 1180-1 et seq.

a warrant for his arrest for attempted murder.[2]  The appellant was taken into custody and brought by automobile to the Harrisburg City Hall parking lot.  Upon exiting the unmarked police vehicle, the appellant pulled out a gun and pointed it at the head of one of the police officers.  At that point, one of the other officers shot the appellant, and he was subdued without further incident.  The appellant was charged with aggravated assault.[3]

On March 19, 1975, appellant was tried and convicted of aggravated assault by a jury and sentenced to a term of imprisonment of not less than five nor more than ten years at a state correctional institution.  No post-trial motions were filed, nor was a direct appeal taken.  However, some six years after his conviction, appellant filed a petition for post-conviction relief pursuant to the Post Conviction Hearing Act.  The PCHA Court appointed new counsel, and on July 16, 1981, appellant filed a supplemental petition for relief under the Act.  On October 1, 1981, the supplemental petition was denied by the PCHA Court without a hearing.  On October 13, 1981, appellant filed on his own behalf a notice of appeal from the denial of his PCHA petition and a motion for the appointment of new counsel for this appeal.  The PCHA Court appointed new counsel on October 28, 1981, and this appeal followed.

Appellant contends that his trial counsel was ineffective for (1) failing to conduct voir dire examination of prospective jurors or to exercise peremptory challenges;  (2) failing to object to the use of a rubber-stamp facsimile signature of the district attorney on the indictment charging him with aggravated assault;  and for (3) failing to file post-trial motions or to take an appeal.  We affirm the determination of the PCHA Court.

**2.**  Appellant was subsequently convicted of attempted murder and first degree murder.  *See: Commonwealth v. Courts,* 468 Pa. 613, 364 A.2d 684 (1976) for a complete discussion of the relevant facts of this case.

**3.**  Act of December 6, 1972, P.L. 1482, No. 334, § 1;  18 Pa.C.S.A. § 2702, since amended.

■ The test for ascertaining whether a defendant has been denied effective assistance of counsel is well established. "... [C]ounsel's assistance is deemed constitutionally effective once we are able to conclude that the particular course chosen by counsel had *some reasonable basis* designed to effectuate his client's interests." *Commonwealth ex rel. Washington v. Maroney*, 427 Pa. 599, 604, 235 A.2d 349, 352 (1967). Moreover, in order to be entitled to relief under a theory of ineffective assistance of counsel, it must appear that counsel's action or inaction was prejudicial to the defendant. *See: Commonwealth v. Hubbard*, 472 Pa. 259, 372 A.2d 687 (1977); *Commonwealth v. Gordon*, 254 Pa.Super. 267, 385 A.2d 1013 (1978). When it cannot be determined from the record whether counsel acted pursuant to a reasoned course, the proper remedy is to remand the record for an evidentiary hearing on that issue. *Commonwealth v. Morin*, 477 Pa. 80, 383 A.2d 832 (1978). However, where it is clear from the record that the acts or omissions claimed to constitute ineffective assistance are either devoid of merit or within the realm of trial strategy, such a remand is not necessary. *Commonwealth v. Wade*, 480 Pa. 160, 389 A.2d 560 (1978).

■ Appellant first contends that trial counsel was ineffective for failing to conduct voir dire examination of prospective jurors or to exercise peremptory challenges. Appellant, however, fails to allege he suffered any specific prejudice. Instead, appellant only generally contends that because he is black and because there was publicity regarding his involvement in other crimes, he was prejudiced by the lack of voir dire examination or the failure of his trial counsel to exercise peremptory challenges. The appellant makes no attempt to show racial prejudice in the composition of the jury panel or any systemic exclusion of blacks from the panel.[4] Furthermore, the appellant does not spe-

4. In *Commonwealth v. Davis,* 267 Pa.Super. 370, 406 A.2d 1087 (1979), this Court dismissed appellant's contention that he was denied a fair trial because of the absence of blacks on the jury panel. The Court stated,

cifically allege how the effect of any pretrial publicity on the minds of the jurors prejudiced their decision in the instant case. This is clearly an insufficient basis upon which counsel could be held to be ineffective.

Appellant's second contention is that trial counsel was ineffective for failing to object to the use of a rubber-stamp facsimile signature of the district attorney on the indictment charging the appellant in the instant case.

Pa.R.Crim.P. Rule 213(a) provides that "[a]n indictment shall be signed by the attorney for the Commonwealth ....." Whether a rubber-stamp facsimile constitutes a "signature" under Rule 213(a) has not been specifically addressed by the Courts of the Commonwealth. Appellant strongly urges this Court to apply to indictments the rule which requires a manual signature of the district attorney to be placed on bills of information.[5] However, appellant fails to distinguish the inherent difference between an indictment and an information.

The policy behind the requirement of a manual signature on an information is well established. Recently, in *Commonwealth v. Veneri*, 306 Pa.Super. 396, 452 A.2d 784 (1982), this Court, sitting *en banc*, stated its reasons for this requirement.

> Under Pa.R.Crim.P. 225(a) the attorney for the Commonwealth has the discretionary power to either proceed with charges by information or move to nolle prosequi the charges. The district attorney or his designee is also

[A]ppellant has failed to show that the panel from which his jury was selected did not represent a cross section of the community ... [T]he defendant has the initial burden of demonstrating a prima facie case of discrimination, then the burden shifts to the Commonwealth to rebut the evidence .... Appellant has made no attempt to show racial prejudice in the composition of the jury panel or any systematic exclusion of blacks from this panel.
267 Pa.Super. at 375, 406 A.2d at 1089. Appellant in the instant case has clearly not demonstrated a prima facie case of discrimination when viewed in light of this reasoning.

5. *Commonwealth v. Belcher*, 258 Pa.Super. 153, 392 A.2d 730 (1981); *Commonwealth v. Emanual*, 285 Pa.Super. 594, 428 A.2d 204 (1981); *Commonwealth v. Veneri*, 306 Pa.Super. 396, 452 A.2d 784 (1982).

mandated to inquire into and make full examination of all the facts and circumstances connected with each case to determine if the filing of an information is warranted 42 Pa.C.S.A. § 8931(d). Thus the act of approving the information is one fraught with grave consequences not the least of which may be the career, reputation and very freedom of the defendant. It would demean the significance of this fateful document if we were to interpret the words "shall be signed" to permit affixing a rubber stamp facsimile to the information. We would thus reduce the required attestation to a mere clerical mechanism no different or more deliberative, for example, than assigning the information a file number for office convenience. It would be simpler and just as meaningful to have the name of the attorney for the Commonwealth preprinted on the information form. It is, therefore, our belief that *only a written indication, by the district attorney or his designee, that the charges contained in an information have been considered and approved satisfy the "signature" requirement of Pa.R.Crim.P. 225(b)*. While the prosecution may find the personal signature requirement of Pa.R.Crim.P. 225(b) to be burdensome, any inconvenience is far outweighed by the need for a deterrent against frivolous charging of an accused.

306 Pa.Super. at 402–03, 452 A.2d at 787. (Emphasis added).

The final presentment of a bill of indictment by a grand jury is the culmination of a strictly mandated procedural process.[6] At least fifteen jurors must review the charges in the bill of indictment presented to them by the district attorney.[7] Each juror as well as the foreman must be administered an oath prior to consideration of the indict-

---

**6.** *See generally* Pa.R.Crim.P., Rules 200–211, 42 Pa.C.S.A.

**7.** *Id.;* Rule 201(a). This rule provides,
(a) The grand jury shall consist of not less than fifteen nor more than twenty-three legally qualified persons.

ment.[8]  Each witness heard by the grand jury must be sworn in and his name placed on the bill of indictment.[9] The bill of indictment may be approved only "if it receives the affirmative vote of at least twelve grand jurors.[10]  The foreman of the grand jury is directed to personally sign the bill.[11]  If, after due consideration by the requisite number of jurors, the bill is dismissed, the Court is directed to either dismiss the defendant or reduce his bail if proper under the circumstances.[12]

In recognition of the many safeguards inherent in the grand jury process, not present in the process of filing a bill of information, our Court has stated,

A bill of indictment presented by a grand jury has indicia of reliability not bound in a bill on information. The grand jury has made an independent determination of the sufficiency of the evidence which need merely be ratified by the district attorney.  In the case of a bill of information, however, it is the prosecutor alone who must decide whether to bring the defendant to trial.  When the vehicle for initiating a criminal trial (i.e., the information) is unsigned, it is not at all apparent that a reasoned evaluation of the advisability of instituting a criminal trial has been made.  The signature on the information is, therefore, a vital ingredient which guarantees the authenticity and reliability of the document.

*Commonwealth v. Belcher*, 258 Pa.Super. 153, 155–156, 392 A.2d 730, 731 (1978), *rev'd on other grounds, Commonwealth v. Veneri*, 306 Pa.Super. 396, 452 A.2d 784 (1982).

In line with this reasoning, the grand jury, when faced with a bill of indictment, decides whether to bring the defendant to trial.  The signature of the foreman, not the district attorney, is the necessary indication that "a rea-

8.  *Id.;*  Rule 206.

9.  *Id.;*  Rule 207.

10.  *Id.;*  Rule 210(b).

11.  *Id.;*  Rule 210(a).

12.  *Id.;*  Rule 210(d).

soned evaluation of the advisability of instituting a criminal trial has been made." *Commonwealth v. Belcher, supra,* 258 Pa.Super. at 156–157, 392 A.2d at 731. It is therefore the signature of the foreman, not the district attorney, which guarantees the reliability and authenticity of the bill of indictment and acts as a deterrent against the frivolous charging of an accused. The foreman's signature appears on the bill of indictment charging the appellant in the instant case.

■ We therefore hold that a rubber-stamp facsimile signature of the district attorney on a bill of indictment is adequate to fulfill its purpose of ratifying the determination of the grand jury and thereby constitutes a proper signing for the purpose of Rule 213(a). The need for a manual signature by the district attorney is far less in the case of a bill of indictment than in the case of a bill of information, as the duties of the district attorney in reviewing a bill of information are superceded by the grand jury's finding of probable cause in passing on a bill of indictment. As such, the rubber-stamp facsimile of the district attorney's signature on the indictment charging the appellant in the instant case does not render such indictment null and void and the present charges may not be dismissed on this ground. We find appellant's fourth contention, that the failure of appellant's trial attorney to object to the use of the rubber-stamp facsimile signature on appellant's indictment constituted ineffective assistance of counsel, to be without merit. It is a well established principle in this Commonwealth that counsel will not be deemed to have been ineffective for failing to assert a baseless or frivolous claim. *Commonwealth v. Davis,* 279 Pa.Super. 218, 420 A.2d 1111 (1980); *Commonwealth v. Rainey,* 282 Pa.Super. 15, 422 A.2d 652 (1980). It is only when the claim which has been forgone was of arguable merit that inquiry must be made into the basis for counsel's decision not to pursue the matter. *Commonwealth v. Weathers El,* 485 Pa. 28, 400 A.2d 1295 (1979); *Commonwealth v. Davis, supra.*

Therefore, our holding herein that a rubber-stamp facsimile signature of the district attorney does not render a bill of

indictment invalid, negates any basis upon which such claim could have been predicated. As such, further inquiry into the attorney's reasons for failing to assert this claim need not be undertaken and appellant's trial counsel cannot be deemed ineffective for failing to raise it.[13]

█ Finally, the appellant contends that his trial counsel was ineffective for failing to file post-trial motions or to pursue a direct appeal thereby obstructing his appellate rights. The PCHA Court specifically rejected this claim finding that the appellant had voluntarily and knowingly waived his post-trial and appellate rights.[14] This finding involved a credibility determination and is amply supported by the record.[15]

Furthermore, appellant's trial and conviction in the instant case followed a trial and convictions on first degree

13. Appellant also contends that the decision in *Commonwealth v. Emanual, supra,* that a rubber-stamp facsimile signature on a bill of information does not satisfy the signature requirement of Pa.R. Crim.P. 225(b), be applied retroactively to the instant case which was decided some six years before *Emanual.* In light of our holding that a rubber-stamp facsimile signature constitutes a proper signing under Pa.R.Crim.P. 213(a), we do not find it necessary to herein address this issue.

14. The Post Conviction Hearing Act, 19 P.S. 1180–4(b), provides that an issue is waived if the petitioner knowingly and understandingly failed to raise it and it could have been raised on appeal, and the petitioner is unable to prove the existence of extraordinary circumstances to justify his failure to raise the issue.

15. The record indicates that at the conclusion of his trial, the appellant was fully informed of his right to file post-trial motions and that the appellant understood these rights. At sentencing, the Court once again informed the appellant of his appeal rights. The appellant's trial counsel alerted the Court to the fact that it would be impossible for him to serve as appellate counsel since he was leaving the country. The attorney stated that not only had he conferred with the appellant to discuss his appellate rights, but that his client had "not felt the need or necessity for an appeal from the case." Notes of Sentencing at 3. Notwithstanding this statement, the Court asked the attorney, in the presence of the appellant, whether the matter had been discussed fully with his client and whether appellant had instructed the attorney not to proceed further. The attorney responded affirmatively. Notes of Sentencing at 4.

murder and attempted murder charges.[16]  The arrest for the attempted murder charge was the event which led to the assault on the police officer, the conviction of which the appellant is now challenging. The appellant was represented by the same counsel in both cases.  In the murder and attempted murder case, post-trial motions were filed in the appellant's behalf.  In the instant case, the appellant's failure to make any post-trial motions or to object at sentencing to the absence of any post-trial motions following his conviction demonstrates the appellant knowingly waived his post-trial and appellate rights.

Appellant was sentenced for the aggravated assault on June 12, 1975, the same day he was sentenced for the murder and attempted murder.  At that time, trial counsel indicated to the Court that he could not pursue the appeals.  Appellant, however, obtained counsel who took appeals on the murder and attempted murder convictions.  Appellant's failure to obtain counsel for an appeal of the aggravated assault charge lends credibility to trial counsel's statement that the appellant did not wish to appeal his conviction on this charge and as such was a knowing, understanding and voluntary decision resulting in a waiver under PCHA.  Consequently, we cannot find that trial counsel was ineffective in this regard.

■ Additionally, it must be noted that the appellant waited six years from the time the jury rendered its verdict in this case until he filed a petition for post-conviction relief.  A lapse of time in filing a PCHA petition is a factor in assessing its merit.  *Commonwealth v. Alexander*, 495 Pa. 26, 432 A.2d 182 (1981); *Commonwealth v. Strickland*, 306 Pa.Super. 516, 452 A.2d 844 (1982).  Appellant's prolonged silence here becomes deafening in light of the rights which the appellant claims he was denied.

Moreover, this Court has recently stated that, "Ineffective assistance of counsel has become the last ditch ploy of defendants in criminal cases and should not be encour-

16.  *See: Commonwealth v. Courts*, 468 Pa. 613, 364 A.2d 684 (1976).