COMMONWEALTH of Pennsylvania,
Appellant

v.

Milton JOHNSON.

Superior Court of Pennsylvania.

Argued Sept. 19, 2006.
Filed April 3, 2007.

Christina Dunn, Assistant District Attorney, Philadelphia, for Com., appellant.

Bradley S. Bridge, Public Defender, Philadelphia, for appellee.

BEFORE: FORD ELLIOTT, P.J., McEWEN, P.J.E., and COLVILLE,* J.

OPINION BY FORD ELLIOTT, P.J.:

¶ 1 The Commonwealth appeals from the order granting appellee's motion to suppress.[1] Upon review of the record, we reverse.

¶ 2 The relevant underlying facts, which are not in dispute, were recited by the trial court in its opinion, dated January 31, 2006:

> On September 11, 2004 there was a shooting at 53rd and Market Streets in West Philadelphia. Appellee was arrested in connection with the shooting several days later. While in custody Appellee admitted to Detectives that he had a gun at his apartment. On the morning of September 15, 2004, Appellee signed a 'consent to search' form permitting police officers to search his apartment at 5025 Walnut Street for a[.]9 millimeter handgun. (N.T. 12/13/05, pp. 10–11). That same morning, when the police went and searched that location they did not find a handgun. (N.T. 12/13/05, p. 19).
>
> While searching the back bedroom of the apartment, Detective Thomas Augustine discovered an open spiral bound

---

* Retired Senior Judge assigned to the Superior Court.

1. This interlocutory appeal is as of right since the Commonwealth has certified that the suppression Order in question substantially handicaps the prosecution. Pa.R.A.P. 311(d); *Commonwealth v. Dugger,* 506 Pa. 537, 486 A.2d 382 (1985).

notebook on the dresser, on top of which lay the first page of a handwritten letter. (N.T. 12/13/05, p. 21). Upon reading the letter, Detective Augustine realized it pertained to the underlying matter and seized the letter as evidence. (N.T. 12/13/05, p. 25).

Trial court opinion, 1/31/06 at 2.

¶ 3 The letter at issue is contained in the record. Near the bottom of the first page, the following apparently incriminating passage appears:

anyway for (me), *Bari* I had another (shutout) with the n****r who shot me, (saturday) night, on (53rd & market st) we were trying to (*kill*) one another, But instead the (*police*) [end of page]

*See* Exhibits, Letter, p. 1. We observe that nothing unusual from the face of the letter, such as arrows, bolding, or different font, sets off this passage from the rest of the letter or calls particular attention to it.

¶ 4 The Commonwealth states the issue for review as follows:

Did the lower court err in suppressing an inculpatory letter found in [appellee]'s bedroom in which he admitted to committing a murder where the letter was discovered in plain view on top of a bureau and the officer had obtained [appellee]'s consent to search his apartment?

Commonwealth's brief at 4.

¶ 5 Our standard of review is well settled:

When the Commonwealth appeals from a suppression order, we follow a clearly defined standard of review and consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted. The suppression court's findings of fact bind an appellate court if the record supports those findings. The suppression court's conclusions of law, however, are not binding on an appellate court, whose duty is to determine if the suppression court properly applied the law to the facts. *Commonwealth v. Nester,* 551 Pa. 157, 709 A.2d 879, 880–81 (1998) (citations omitted).

*Commonwealth v. Keller,* 823 A.2d 1004, 1008 (Pa.Super.2003), *appeal denied,* 574 Pa. 765, 832 A.2d 435 (2003).

¶ 6 The narrow issue that is presented by this case entails simply whether a police officer, pursuant to the plain view doctrine, may properly read the exposed pages of a letter, and then make a warrantless seizure of that letter should its contents prove incriminating. Before conducting this assessment, a restatement of the plain view doctrine is merited:

The plain view doctrine permits the warrantless seizure of evidence in plain view when: (1) an 'officer views [the] object from a lawful vantage point'; and (2) it is 'immediately apparent' to him that the object is incriminating. *Commonwealth v. Petroll,* 558 Pa. 565, 738 A.2d 993, 999 (1999) . . . .

In determining 'whether the incriminating nature of an object [is] immediately apparent to the police officer,' we look to the 'totality of the circumstances.' *Id.* An officer can never be one hundred percent certain that a substance in plain view is incriminating, but his belief must be supported by probable cause. *Commonwealth v. Ellis,* 541 Pa. 285, 662 A.2d 1043, 1049 (1995).

*Commonwealth v. Ballard,* 806 A.2d 889, 891–892 (Pa.Super.2002). We note in passing that appellee does not claim that the police were not in a lawful vantage point. Thus, the issue revolves upon whether the incriminating nature of the letter was "immediately apparent."

¶ 7 The trial court ruled that the police officer could not read the letter, analyzing that the plain view doctrine required that an object's criminality be immediately ap-

parent, which the court found was not true as to the instant writing. The court allowed that in some limited instances a writing's incriminating nature might be immediately apparent, such as where arrows might point to words, but found that in this case, the incriminating nature of the writing was not immediately apparent. The court found that the officer must have read the letter in its entirety. The court likened the situation to the impermissible manipulation of a physical object before its incriminating nature becomes apparent.[2] While there is a certain appeal to the trial court's reasoning that is reflective of the closeness of this issue, case law and logic lead us to an opposite conclusion.

¶ 8 The Commonwealth cites the closest Pennsylvania case on point, *Commonwealth v. Strickland,* 306 Pa.Super. 516, 452 A.2d 844 (1982). In *Strickland,* police executed a search warrant of appellant's uncle's home for the purpose of finding narcotics. While conducting this search police came upon a letter from appellant lying open and in plain view on a bureau top. Therein, appellant, who was incarcerated and awaiting trial for a homicide committed with a .25 caliber gun, stated, "... I cannot afford to have that [.]25 automatic in the wrong hands which would be the police." *Strickland,* 452 A.2d at 847. Appellant argued that the letter should have been suppressed because the letter was not within the scope of the warrant.[3] This court held that the letter was properly seized under the plain view doctrine. Although the present issue does not appear to have been at the crux of the argument in *Strickland,* implicit in that holding is the notion that a letter may be seized under the plain view doctrine even though

its contents cannot be known until the letter is read.

¶ 9 Appellee attempts to distinguish *Strickland* arguing that the suppression court in that case must have found the contents of the letter therein to have been immediately apparent. Appellee contrasts this with the instant case in which the court made a factual and credibility finding that the incriminating nature of the subject letter was not immediately apparent. To this we respond that the incriminating nature of words cannot be known until they are read; if the *Strickland* court found the subject letter as properly seized under the plain view doctrine, then it must have subsumed the reading of the letter to be within the meaning of "immediately apparent."

¶ 10 Federal case law has also allowed the perusal of personal letters to fall within the meaning of "immediately apparent." In *United States v. Crouch,* 648 F.2d 932 (4th Cir.1981), *cert. denied, Crouch v. United States,* 454 U.S. 952, 102 S.Ct. 491, 70 L.Ed.2d 259 (1981), federal agents executed a search warrant directed toward the seizure of chemicals, laboratory equipment, and other paraphernalia used in the manufacture of methamphetamines. During the search, incriminating letters of the wife/appellant were found in a desk drawer while incriminating letters of the husband/appellant were found in the wife's purse. In finding that the plain view doctrine supported the seizure of these letters, the court stated:

> We attach no significance to the fact that some cursory reading of the letters was necessary in order to establish their

---

**2.** *See Arizona v. Hicks,* 480 U.S. 321, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987) (moving record turntable suspected of having been stolen to expose its serial number for recordation was not part of plain view observation,

but rather constituted independent search requiring probable cause).

**3.** We note that the basis for the instant search was consent rather than a warrant and that the scope was, therefore, broader.

nature. In *United States v. Ochs*, 595 F.2d 1247 (2d Cir.1979), Judge Friendly noted that '(a) number of courts, including this one, have upheld without much discussion the seizure of documents during an otherwise valid search as in "plain view" notwithstanding the fact that some perusal, generally fairly brief, of the documents was clearly necessary in order for the police to perceive the relevance of the document to crime.' 595 F.2d at 1257, note 8. In that case, the Second Circuit upheld the plain view seizure of certain index cards which in fact were loansharking records, regardless of the fact that police were obliged to take note of their contents before their incriminating nature became apparent. Similarly, in *Mapp v. Warden*, 531 F.2d 1167 (2d Cir.1976), on facts nearly indistinguishable from those here, the same circuit held that certain rent receipts were properly seized as in plain view even though their incriminating nature was only apparent after police noticed a suspicious name on them. The court stated that 'it would be somewhat absurd to require an investigator to be oblivious to that which would be apparent to anyone else with normal powers of observation.' 531 F.2d at 1172.

We have noted with approval the rule in *Ochs* and *Mapp, supra,* that the brief perusal of an item does not render its incriminating nature any the less immediately apparent.

*United States v. Crouch,* 648 F.2d at 933–934. We are also mindful that courts in other states have come to a similar conclusion. *See State v. Keup,* 265 Neb. 96, 655 N.W.2d 25 (2003); *People v. Dressler,* 317 Ill.App.3d 379, 250 Ill.Dec. 867, 739 N.E.2d 630 (2000), *appeal denied,* 196 Ill.2d 551, 261 Ill.Dec. 352, 763 N.E.2d 322 (2001).

¶ 11 We find that logic also dictates our result. The plain view doctrine functions differently depending upon the thing that is perceived. If a police officer spies a pistol on a table, its potentially incriminating nature is not only "immediately apparent," it is very likely instantaneous. In contrast, if it is a sheet of paper on the table, there is nothing inherently incriminating in paper alone and nothing may be "immediately apparent." [4] On the other hand, if the paper contains writing, the writing itself may be incriminating. However, the incriminating nature of writing is not perceived until it is read. Only then does its incriminating nature become "immediately apparent."

¶ 12 Furthermore, we see no sense in imposing some artificial limit on the number of words that may be read before the incriminating nature of a document is no longer "immediately apparent." The incriminating nature of a letter cannot be known until the key words are read and it should not matter whether they occur in the first sentence of the letter or the last. We will not restrict a police officer either to the first few words of a letter, where the eyes are naturally drawn, or to those that "jump off the page." Simply stated, it seems foolish to tell our police officers that they may observe items in plain view, but that they must not look too closely. If a letter is left lying open on a table, we find that its entire contents are exposed to plain view and the letter is subject to seizure under that doctrine.[5]

---

**4.** Assuming that the paper is not, for example, blank currency stock or divided into perforated squares, each with a colored stain in the middle, denoting that it may contain doses of some illegal drug.

**5.** We further find, without holding, that a police officer could not turn the pages of a multiple-page letter to reveal the unexposed pages as this would constitute improper manipulation and an independent search requiring probable cause. *Arizona v. Hicks.*

¶ 13 Thus, we find that pursuant to both case law and logic, the court below erred in suppressing the letter at issue. The entire contents, including the passage at issue, were openly exposed in plain view, and its incriminating nature was immediately apparent upon the key words being read. Accordingly, we will reverse the order below and allow the letter to be admitted at trial.

¶ 14 Order reversed. Jurisdiction relinquished.

¶ 15 McEWEN, P.J.E. concurs in the result.