J-A11036-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| BERNARD J. TERRELL | |
| Appellant | No. 236 EDA 2015 |

Appeal from the Judgment of Sentence January 12, 2015
in the Court of Common Pleas of Philadelphia County Criminal Division
at No(s): CP-51-CR-0011246-2014

BEFORE: SHOGAN, MUNDY, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.:                    **FILED JULY 21, 2016**

Appellant, Bernard J. Terrell, appeals from the judgment of sentence imposed in the Philadelphia County Court of Common Pleas following his convictions for carrying a firearm on public streets or property in Philadelphia.[1]  Appellant argues that the trial court erred by failing to suppress evidence and by admitting evidence in contravention of the *corpus delicti* rule.  We affirm.

The trial court summarized the underlying facts as follows:

> On January 12, 2015, Officer Ronald Kwiatkowski, a probation and parole officer with the Juvenile Division, YVRP (Youth Violence Reductionship Program), Juvenile Warrant, credibly testified that on August 8, 2014 at around 7:45 a.m. he was working with the Juvenile Warrant Division at 1646 West Nedro Avenue, 3rd Floor, in

---

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S. § 6108.

Philadelphia, Pennsylvania. Officer Kwiatkowski stated that he has been with the Juvenile Warrant Department, specifically the YVRP for eight (8) years. Officer Kwiatkowski stated that he was looking for Nyree Terrell [Appellant's brother] on the morning in question . . . .

Officer Kwiatkowski stated that when his team approached the front door of the apartment it knocked and announced. The Officer stated that at that time the team received a radio [c]all from police covering the side of the building notifying them that someone was trying to come out via the fire escape. The team continued to knock and announce at the front door, until it was opened by [Appellant's] father. Officer Kwiatkowski stated two (2) officers entered before him and proceeded towards the kitchen area. These officers apprehended [Appellant] in the kitchen, where the fire escape is located. He stated that he started to clear the house for officer safety and search with the rest of the team.

Officer Kwiatkowski testified that he entered the hallway and then the first bedroom on the left to look for Nyree Terrell. The door was not locked. He began to clear the bedroom looking for Nyree Terrell, searching "anywhere a body can be hiding." This included looking under the bed, at which time Officer Kwiatkowski observed a handgun. He immediately saw what looked like a steel pipe that resembled a baton at that time. Upon further investigation, the officer went to the side of the bed and saw the firearm on the other side of the baton. Officer Kwiatkowski notified his supervisor and the police at the scene, who then came to the bedroom and recovered the gun.

Officer Kwiatkowski was then directed to go in the living room and guard [Appellant] to make sure that he was secured while the other officers completed the search of the premises. Shortly after the gun was recovered, Nyree Terrell was located. Officer Kwiatkowski testified that while he was in the living room [Appellant's] father was notified of the gun found under the bed, and turned to [Appellant] and disappointedly asked, "A gun?" [Appellant] replied facing his father, "It's mine. I found it about a week ago in a red Camaro." Officer Kwiatkowski

stated that he did not ask [Appellant] any questions while in the living room nor did any other officers present with him.

* * *

On cross-examination, Officer Kwiatkowski affirmed that he was on a warrant sweep, going from residence to residence collecting individuals who are wanted on active warrants. . . . Officer Kwiatkowski stated that the warrant issued for Nyree Terrell was for failing to appear. He also stated that he had no information on [Appellant], and no information that either posed any safety threat. He explained that prior to executing the warrant, he reviews pictures and was aware of what Nyree Terrell looked like to an extent. Officer Kwiatkowski explained that when he enters a house, all persons are secured inside until they can be positively identified.

Officer Kwiatkowski testified that when he opened the door to the bedroom he did not see an outline of a person under the bed and when he actually looked under the bed, no one was there. He reiterated that he first saw a steel pipe under the bed and that when he moved the bed away from the wall to identify the object, he saw the gun between the pipe and the wall. Officer Kwiatkowski stated that there were two young children, aged seven (7) to nine (9), who did not pose a safety threat as they were on top of the bed. Once the gun was found, he instructed a female officer that was in the hallway to take the two children into the living room to sit with the father. Officer Kwiatkowski stated that as he searched the bed he received information that Nyree Terrell had been found at the back of the house in the hallway.

Officer Kwiatkowski testified that he did not see a wallet, license or anything else that initially identified the ownership of the gun. He stated that before finding the gun, he saw that [Appellant] was handcuffed after he was found trying to exit the kitchen onto the fire escape. Officer Kwiatkowski explained that [Appellant] was seated in a chair in the living room across from his father, who was seated next to the two little children. Officer Kwiatkowski's supervisor notified [Appellant's] father that

- 3 -

a weapon was found. The gun was in a bag when officers showed it to [Appellant]. Officer Kwiatkowski stated that police were not standing over [Appellant] and that [Appellant] was not read his ***Miranda*** rights prior to his statement.

Evidence was introduced at trial by way of stipulation by and between counsel that the firearm found in the bedroom by Officer Kwiatkowski was recovered by Officer Rockemore and Officer Bruhns and that [Appellant] was not licensed to carry a firearm. That firearm was an operable Firestar 40 caliber gun loaded with five (5) rounds and was placed on [a] property receipt.

Trial Ct. Op., 4/27/15, at 2-6 (citations omitted).

Appellant was initially charged with carrying a firearm without a license,[2] carrying a firearm on public streets or property in Philadelphia,[3] and possession of a controlled substance.[4] On January 8, 2015, Appellant filed a motion to quash, and on December 12, 2014, Appellant filed a motion to suppress physical evidence, including the firearm here at issue. On January 15, 2015, the trial court conducted a suppression hearing followed by a stipulated non-jury trial. The court denied Appellant's motion to quash and motion to suppress. The court found Appellant guilty of carrying a firearm on public streets or property in Philadelphia, and sentenced him to time served to twelve months' incarceration followed by forty-eight months'

---

[2] 18 Pa.C.S. § 6106.

[3] 18 Pa.C.S. § 6108.

[4] 35 P.S. § 780-113.

- 4 -

reporting probation. This timely appeal followed. Appellant timely filed a court-ordered Pa.R.A.P. 1925(b) statement and the trial court filed a responsive Pa.R.A.P. 1925(a) opinion.

Appellant raises the following issues for our review:

> 1. Did not the lower court err in denying [A]ppellant's motion to suppress evidence where the [A]ppellant was detained and evidence was subsequently seized without probable cause or a search warrant or an exception to the warrant requirement; specifically, after [Appellant] had already been detained, a warrant officer, while conducting a protective sweep of [Appellant's] residence pursuant to the effectuation of a warrant to arrest another resident of the home, exceeded the scope of the permissible search by moving a bed, thus uncovering a firearm, after the officer ascertained that there was no person hiding under the bed and before the officer saw any item whose nature as a weapon or contraband was apparent to the officer?
>
> 2. Did not lower court err in failing to quash the indictment and in permitting [Appellant's] statement (that he possessed a firearm found at the location) to be introduced in evidence against him at trial without the Commonwealth first establishing the *corpus* [*delicti*] of a crime through evidence independent of the statement?

Appellant's Brief at 4.

In his first issue, Appellant argues that the trial court erred by failing to suppress evidence of the gun because Officer Kwiatkowski exceeded the scoop of a search permitted pursuant to a "protective sweep" incident to an arrest. Specifically, Appellant avers that Officer Kwiatkowski effectively conducted an impermissible search when he "moved a bed" in order to recover the gun. Appellant contends that because the bed was moved, the gun was not subject to the "plain view" exception to the warrant

- 5 -

requirement. Further, he asserts that the metal pipe initially detected by Officer Kwiatkowski did not constitute evidence of a weapon or contraband in need of further investigation. We disagree.

When considering the trial court's denial of a motion to suppress, this Court employs the following standard of review:

> [An appellate court's] standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, [the appellate court is] bound by [those] findings and may reverse only if the court's legal conclusions are erroneous. Where . . . the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of the courts below are subject to [ ] plenary review.

*Commonwealth v. Jones*, 121 A.3d 524, 526-27 (Pa. Super. 2015) (citation omitted).

"A warrantless search or seizure is presumptively unreasonable under the Fourth Amendment and Article I, § 8, subject to a few specifically established, well-delineated exceptions." *Commonwealth v. McCree*, 924 A.2d 621, 627 (Pa. 2007). A "protective sweep" is one such exception:

> [i]t is well settled that "[u]nder emergent circumstances, protective sweeps are a well-recognized exception to the

warrant requirement." *Commonwealth v. Witman*, 2000 PA Super 92, 750 A.2d 327, 335 (Pa. Super. 2000), *appeal denied* 564 Pa. 138, 764 A.2d 1053 (Pa. 2000), *cert. denied*, 534 U.S. 815, 122 S. Ct. 42, 151 L. Ed. 2d 15 (2001).

A protective sweep is "a quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others." *Maryland v. Buie*, 494 U.S. 325, 327, 110 S. Ct. 1093, 108 L. Ed. 2d 27 (1990). Buie sets forth two levels of protective sweeps. *Id*. at 334, 110 S. Ct. 1093. The two levels are defined thus:

> [A]s an incident to the arrest the officers could, as a precautionary matter and without probable cause or reasonable suspicion, look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched. Beyond that, however, we hold that there must be articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene.

*Id.* Pursuant to the first level of a protective sweep, without a showing of even reasonable suspicion, police officers may make cursory visual inspections of spaces immediately adjacent to the arrest scene, which could conceal an assailant. The scope of the second level permits a search for attackers further away from the place of arrest, provided that the officer who conducted the sweep can articulate specific facts to justify a reasonable fear for the safety of himself and others.

*Commonwealth v. Taylor*, 565 Pa. 140, 771 A.2d 1261, 1267 (Pa. 2001), *cert. denied*, 534 U.S. 994, 122 S. Ct. 462, 151 L. Ed. 2d 380 (2001).

*Commonwealth v. Potts*, 73 A.3d 1275, 1281–82 (Pa. Super. 2013).

A properly conducted sweep is for persons:

It cannot be used as a pretext for an evidentiary search. It cannot be lengthy or unduly disruptive. It must be swift and target only those areas where a person could reasonably be expected to hide.

***Commonwealth v. Crouse***, 729 A.2d 588, 598 (Pa. Super. 1999).

In addition, "[t]he 'plain view' doctrine is often considered an exception to the general rule that warrantless searches are presumptively unreasonable . . . ." ***McCree***, 924 A.2d at 627 (quoting ***Horton v. California***, 496 U.S. 128, 133, 110 S. Ct. 2301, 2306, 110 L. Ed. 2d 112 (1990)).

We note the following legal precepts regarding the plain view doctrine:

The plain view doctrine permits the warrantless seizure of evidence in plain view when: (1) an officer views the object from a lawful vantage point; and (2) it is 'immediately apparent' to him that the object is incriminating.

In determining 'whether the incriminating nature of an object is immediately apparent to the police officer,' we look to the totality of the circumstances.' An officer can never be one hundred percent certain that a substance in plain view is incriminating, but his belief must be supported by probable cause.

***Commonwealth v. Johnson***, 921 A.2d 1221, 1223 (Pa. Super. 2007) (citations omitted).

When reviewing whether an object's criminal nature is "immediately apparent," we note that probable cause

merely requires that the facts available to the officer would warrant a man of reasonable caution in the belief, that certain items may be contraband or stolen property or useful as evidence of a crime; it does not demand any

- 8 -

> showing that such a belief be correct or more likely true than false. A practical, non-technical probability that incriminating evidence is involved is all that is required.

***Commonwealth v. McEnany***, 667 A.2d 1143, 1148 (Pa. Super. 1995) (citations, emphasis, and internal quotation marks omitted) (emphasis omitted).

In the case *sub judice*, we conclude that the trial court properly determined that the gun in question was discovered pursuant to the plain view exception to the warrant requirement during a permissible protective sweep incident to the arrest of Appellant's brother, Nyree Terrell. Specifically, officers arrived at Appellant's residence pursuant to a valid search warrant on Appellant's brother for failing to appear in juvenile court. Trial Ct. Op. at 9. Accordingly, Officer Kwiatkowski, for purposes of the officer's own safely and protection under the protective sweep doctrine, properly searched under a bed to see if Nyree Terrell was present there. *See* ***Potts***, 73 A.3d at 1281-82; ***Crouse***, 729 A.2d at 598.

However, instead of the fugitive, Officer Kwiatkowski saw an object that caught his immediate attention. The object appeared to be metal and baton-like but in order to be sure it was not a weapon or contraband, the officer moved the bed slightly, at which time he was able to plainly observe the gun in question. We hold that a 'practical non-technical' view of the facts available to Officer Kwiatkowski, including the object's placement in a corner under the bed and the valid warrant on Appellant's brother, supports

the conclusion that a person of reasonable caution would have probable cause to believe that the object initially viewed under the bed could constitute a weapon or contraband. *See Johnson*, 921 A.2d at 1223; *McEnany*, 667 A.2d at 1148. Thus, Officer Kwiatkowski's further investigation of the object was lawful and led to the discovery of the gun in plain view. Accordingly, we hold that Officer Kwiatkowski properly seized the gun pursuant to the plain view doctrine because (1) he lawfully engaged in a search under the subject bed pursuant to the protective sweep doctrine incident to a valid warrant for Appellant's brother's arrest and (2) he had probable cause, under the totality of the circumstances, to believe that the object he observed under the bed was evidence of criminal activity. *See Johnson*, 921 A.2d at 1223; *McEnany*, 667 A.2d at 1148. Therefore, we conclude that the trial court did not err by declining to suppress the gun and Appellant's first issue lacks merit.

Turning to his second issue, Appellant contends that the trial court erred by admitting Appellant's incriminatory statement in violation of the *corpus delicti* rule. Appellant argues that the Commonwealth failed to present sufficient evidence of the commission of a crime, prior to the admission of Appellant's statement confessing to illegal possession of the gun. Specifically, Appellant avers that the evidence presented was insufficient to prove, either by a preponderance of the evidence or beyond a

reasonable doubt, that he had carried a firearm on a public street or property in Philadelphia, absent his statement. We do not agree.

As a prefatory matter, we note our standard of review:

> [t]he *corpus delicti* rule is an evidentiary one. On a challenge to a trial court's evidentiary ruling, our standard of review is one of deference.

> The admissibility of evidence is solely within the discretion of the trial court and will be reversed only if the trial court has abused its discretion. An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record.

***Commonwealth v. Hernandez***, 39 A.3d 406, 410-411 (Pa. Super. 2012) (citations omitted).

"The *corpus* [*delicti*] rule places the burden on the prosecution to establish that a crime has actually occurred before a confession or admission of the accused connecting him to the crime can be admitted." ***Commonwealth v. Dupre***, 866 A.2d 1089, 1097 (Pa. Super. 2005) (citations omitted). However, "[t]he Commonwealth need not prove the existence of a crime beyond a reasonable doubt as an element in establishing the *corpus delicti* of a crime, but the evidence must be more consistent with a crime than with accident." ***Id.*** at 1098 (citation omitted). In addition, it is well settled that the *corpus delicti* may be proven by circumstantial evidence. ***Commonwealth v. Hogans***, 584 A.2d 347, 349 (Pa. Super. 1990). Further, we note:

- 11 -

> Establishing the *corpus delicti* in Pennsylvania is a two-step process. The first step concerns the trial judge's admission of the accused's statements and the second step concerns the fact finder's consideration of those statements. In order for the statement to be admitted, the Commonwealth must prove the *corpus delicti* by a preponderance of the evidence. In order for the statement to be considered by the fact finder, the Commonwealth must establish the *corpus delicti* beyond a reasonable doubt.

**Commonwealth v. Young**, 904 A.2d 947, 956 (Pa. Super. 2006).

In this case, we conclude that the trial court was well within its purview when finding that ample evidence supported the admission and consideration of Appellant's incriminating statement under the *corpus delicti* rule, under both a preponderance of the evidence standard and a beyond a reasonable doubt standard, where the evidence presented was consistent with criminal activity and not mistake. **See Young**, 904 A.2d at 956. **Dupre**, 866 A.2d at 1097. As aptly noted by the court, the Commonwealth established that Officer Kwiatkowski discovered a loaded gun, situated in a corner under a bed at Appellant's residence, in the presence of young children. Appellant was not licensed to carry a gun. Further, the officers found Appellant adjacent to the fire escape, moments after a radio call indicating that someone had been seen trying to exit via the fire escape. Accordingly, we conclude that the trial court did not abuse its discretion by admitting Appellant's incriminating statement in light of the significant circumstantial evidence presented to establish the requisite *corpus delicti*.

**See** *Hogans*, 584 A.2d at 349.  Therefore, Appellant's second issue on appeal must also fail and we affirm his judgment of sentence.

Judgment of sentence affirmed.

Judge Mundy joins this Memorandum.

Judge Shogan files a Dissenting Memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/21/2016