599 P.2d 1045

STATE of New Mexico,
Plaintiff-Appellee,

v.

Frank F. TURKAL, Defendant-Appellant.

No. 12158.

Supreme Court of New Mexico.

Sept. 21, 1979.

Reginald J. Storment, Appellate Defender, Santa Fe, for defendant-appellant.

Toney Anaya, Atty. Gen., Michael A. Kauffman, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

SOSA, Chief Justice.

Defendant appeals his conviction, pursuant to a jury verdict, of three counts of first degree criminal sexual penetration, § 30–9–11A, N.M.S.A.1978, and a subsequent sentence of life imprisonment. The issues we address in this appeal are:

1) Did the trial court err in denying defendant's motion to suppress the items seized during the search of his home; and

2) Did the trial court err in *sua sponte* admitting into evidence the affidavit for the search warrant?

On February 9, 1978, Dan Lundy of the Bernalillo County Sheriff's Department prepared an affidavit for a search warrant based on information that he had received from a confidential informant and from Lt. Grisham, also of the Sheriff's Department. A warrant was issued to search defendant's home for marijuana in an unknown quantity and any nude photographs which might be found on the premises.

When the officers executed the warrant on February 9, they did not find any marijuana. They did find some nude photographs of at least two girls and other items in defendant's bedroom. The officers seized the photographs, cassette tapes, a tape recorder, polaroid cameras, and a marijuana pipe. Most of the photographs were of a young girl named Jennifer.

On the evening of February 9, the officers went to Jennifer's home and began an investigation of her relationship with defendant. On February 13, 1978, a criminal complaint was filed against defendant charging him with one count of first degree criminal sexual penetration of a child less than 13 years old, who was identified as Jennifer. The crime was alleged to have occurred on or about February 9, 1978. The complaint was subsequently amended to read that the act of criminal sexual penetration had occurred between February 15, 1975 and April 15, 1975. The date was amended because Jennifer was fifteen in 1978.

A bind-over order was filed on March 8, 1978, charging defendant with five counts of first degree criminal sexual penetration occurring between February 15, 1975 and July 26, 1975; three counts of distribution of controlled substances; and two counts of contributing to the delinquency of minors. Defendant moved to dismiss the information charging him with these crimes on the basis that he had not received a valid preliminary hearing. The motion was denied. Defendant also moved to suppress all the physical evidence seized from his residence under the authority of the search warrant. This motion was also denied.

Defendant's trial began on July 10, 1978. Lundy testified regarding the search of defendant's home and the investigation of Jennifer. During cross-examination, defendant had the affidavit used in support of the search warrant marked as defendant's Exhibit A. By an oversight, the affidavit, though not admitted, was passed to and viewed by some of the jurors. Defendant moved for a mistrial; this motion was denied. The State moved for admission of the affidavit into evidence. The court admitted the affidavit over defendant's objection.

The trial court directed a verdict of not guilty on two counts of criminal sexual penetration. The jury returned verdicts of guilty as to each of the three counts of criminal sexual penetration and verdicts of not guilty as to the drug counts. Defendant moved for a new trial. This motion was denied. Defendant appeals.

### I. *Seizure of the Items*

In his first point, defendant argues that the trial court erred in denying his motion to suppress the items seized during the search of his home. In his motion to suppress, defendant argued that the affidavit

for the search warrant gave no probable cause on which to issue a warrant to search for any nude or partially nude photographs.

In *Aguilar v. Texas*, 378 U.S. 108, 114, 84 S.Ct. 1509, 1514, 12 L.Ed.2d 723 (1964), the United States Supreme Court said:

> Although an affidavit may be based on hearsay information and need not reflect the direct personal observations of the affiant, *Jones v. United States*, 362 U.S. 257, [80 S.Ct. 725, 4 L.Ed.2d 697] the magistrate must be informed of some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, and *some of the underlying circumstances from which the officer concluded that the informant*, whose identity need not be disclosed, see *Rugendorf v. United States*, 376 U.S. 528, [84 S.Ct. 825, 11 L.Ed.2d 887,] *was "credible" or his information "reliable."* (Emphasis added and footnote omitted.)

*See also Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); N.M.R.Crim.P. 17(f), N.M.S.A.1978.

The affidavit in this case contains three sources of information. The first source consists of a reliable confidential informant, who advised Lundy on February 9 that he had personally observed quantities of marijuana in excess of three pounds in defendant's Albuquerque home from January 26, 1978 to February 9, 1978. The informant also advised Lundy that defendant was furnishing marijuana and other drugs to numerous teenage children in defendant's neighborhood and that defendant had been doing so for quite some time. Lundy stated in the affidavit that he had used information provided by the confidential informant in the past on at least ten separate occasions and that it had proven to be true and correct on each occasion. The second source of information consists of one of the informant's friends, who told informant that he had observed marijuana in defendant's home on the morning of February 9. The third source, which is the one at issue here, consists of an unidentified "concerned juvenile citizen", who reported to Lt. Grisham that defendant was furnishing illegal drugs to several juveniles in the Albuquerque area and that defendant had been taking nude photographs of young girls and had, in fact, asked her to pose for him.

■ Because of the knowledge personal to the juvenile informant, and by a reading of the affidavit as a whole, the juvenile's veracity is shown by the reliability of the information which she provided. The information supplied by the juvenile relating to defendant's furnishing drugs to teenagers was corroborated by the information supplied by the confidential informant. Under the facts of this case, we hold that the affidavit for the search warrant contained sufficient facts upon which the district court judge could determine that the juvenile's information as to the photographs was reliable. We defer to the court's determination as to the existence of probable cause to search defendant's home for nude photographs. *See State v. Bowers*, 87 N.M. 74, 529 P.2d 300 (Ct.App.1974).

In his motion to suppress, defendant also argued that the seizure of the items exceeded the scope of the search warrant. The State counters that the seizure was proper because the items were found in plain view during the course of a legal search.

■ As previously stated, the items seized included photographs, tapes, a recorder, two polaroid cameras, and a marijuana pipe. Because we have determined that there was probable cause to search defendant's home for the photographs, we find that they were properly seized. We also find that the cameras and marijuana pipe were properly seized. However, this is not the case with the tapes and recorder.

During the execution of the search warrant, the officers discovered that a tape recorder and microphone were hooked up under defendant's bed. Most of the tapes were found in the drawers of a nightstand. Upon reading the titles written on the labels of the tapes, the officers decided to listen to them to see if the tapes contained criminal evidence.

In *State v. Paul*, 80 N.M. 521, 458 P.2d 596 (Ct.App.1969), *cert. denied*, 80 N.M. 746, 461 P.2d 228 (1969), *cert. denied*, 397 U.S. 1044, 90 S.Ct. 1354, 25 L.Ed.2d 654 (1970), defendant contended that the officers had no authority to seize certain items because they were not described in the search warrant. The Court of Appeals stated that *Marron v. United States*, 275 U.S. 192, 48 S.Ct. 74, 72 L.Ed. 231 (1927), was controlling. 80 N.M. at 524, 458 P.2d at 599. In *Marron*, the United States Supreme Court said:

> The requirement that warrants shall particularly describe the things to be seized makes general searches under them impossible and prevents the seizure of one thing under a warrant describing another. As to what is to be taken, nothing is left to the discretion of the officer executing the warrant.

275 U.S. at 196, 48 S.Ct. at 76. *See also Stanford v. Texas*, 379 U.S. 476, 85 S.Ct. 506, 13 L.Ed.2d 431 (1965), *rehearing denied*, 380 U.S. 926, 85 S.Ct. 879, 13 L.Ed.2d 813 (1965); *United States v. LaVallee*, 391 F.2d 123 (2nd Cir. 1968).

Although the case is not on point, we find the rationale employed by Justice Stewart in his concurring opinion in *Stanley v. Georgia*, 394 U.S. 557, 569, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969), persuasive. In *Stanley*, an investigation of defendant's bookmaking activities led to the issuance of a warrant to search his home for evidence of such activities. The officers found very little evidence of bookmaking activity. However, they found reels of film, which they concluded were obscene matter in violation of Georgia law.

 As in *Stanley*, what began as a perfectly lawful search in this case "became the occasion for an unwarranted and unconstitutional seizure" of tapes and a tape recorder. *Id.* at 570, 89 S.Ct. at 1250. In addition, the seizure of the tapes and recorder was not one as to which "agents in the course of a lawful search came upon contraband, criminal activity, or criminal evidence in plain view." (Footnote omitted.) *Id.* at 571, 89 S.Ct. at 1251. The

contents of the tapes, like the contents of the film in *Stanley*, could not be determined by mere inspection.

 The warrant here authorized the seizure of marijuana and nude photographs. The warrant gave the officers no authority to seize the tapes or recorder. Their authority did not extend beyond that conferred by the warrant. *Marron v. United States, supra; State v. Paul, supra.* In addition, we feel there was no basis for a warrantless seizure of the tapes and recorder. The record does not show that these items were seized on the grounds that the officers believed them to be illegally possessed property. *See State v. Bell*, 90 N.M. 160, 560 P.2d 951 (Ct.App.1977), *cert. denied*, 90 N.M. 254, 561 P.2d 1347 (1977). The seizure of the tapes and recorder was based upon a suspicion of criminal conduct; it was not based upon knowledge of any previous criminal activity. *See State v. James*, 91 N.M. 690, 579 P.2d 1257 (Ct.App. 1978), *cert. denied*, 91 N.M. 751, 580 P.2d 972 (1978). "[T]he mere suspicion or expectation that an item may prove, in some unknown way, incriminating to a defendant is not sufficient justification for the seizure of the item. (Footnote omitted.)" 68 Am. Jur.2d *Searches and Seizures* § 85 (1973).

Because the tapes and recorder were seized in violation of the Fourth and Fourteenth Amendments, they were inadmissible in evidence at defendant's trial. We hold, therefore, that the district court erred in denying defendant's motion to suppress those items.

## II. *Admission of the Affidavit*

The second issue we address is whether the district court erred in admitting Lundy's affidavit for the search warrant. The affidavit had been marked as defendant's Exhibit A. It had not been admitted into evidence. By some oversight, the affidavit was viewed by certain jurors. Defendant moved for a mistrial upon learning of this situation. The motion was denied. The court then admitted the affidavit into evidence. Defendant argues that the admission of the affidavit constitutes reversible

error because it presented prejudicial hearsay testimony against defendant.

 We have compared the information contained in the affidavit with Lundy's testimony. The information contained in the affidavit was not fully brought out in Lundy's testimony. We are of the opinion that the affidavit was not handled properly. It may well be that the affidavit interjected such objectionable material that it prejudiced defendant's case. We cannot say that its admission was not prejudicial to defendant.

For the foregoing reasons, defendant's conviction is hereby reversed. The cause is remanded to the district court for a new trial to be held consistent with this opinion.

IT IS SO ORDERED.

EASLEY and PAYNE, JJ., concur.