**UNITED STATES of America, Appellee,**

v.

**Gary Carwell CROUCH, Appellant.**

**UNITED STATES of America, Appellee,**

v.

**Mary CROUCH, Appellant.**

**Nos. 79–5080, 79–5096.**

United States Court of Appeals, Fourth Circuit.

Argued Feb. 2, 1981.

Decided May 4, 1981.

John R. Lester, Columbia, S. C., for appellant in No. 79–5080.

Stanford E. Lacy, Columbia, S. C., on brief, for appellant in No. 79–5096.

Eric Wm. Ruschky, Asst. U. S. Atty., Columbia, S. C. (Thomas E. Lydon, Jr., U. S. Atty., Columbia, S. C., on brief), for appellee.

Before HAYNSWORTH, Chief Judge, BRYAN, Senior Circuit Judge, and WIDENER, Circuit Judge.

PER CURIAM:

Mary Crouch and her son, Gary Carwell Crouch, were convicted in the United States District Court of South Carolina of conspiracy to manufacture and distribute methamphetamine, a Schedule II controlled substance, in violation of 21 U.S.C. §§ 841(a)(1), 846, and the attempted manufacture of the same substance in violation of 21 U.S.C.

§§ 841(a)(1), 846, and 18 U.S.C. § 2.[1] They seek relief from these convictions on the ground that certain evidence introduced by the government at trial was seized in violation of the Fourth Amendment. We hold that the seizure was not invalid and affirm the judgment of the district court.

On July 6, 1978, agents of the Drug Enforcement Administration executed a federal search warrant at 2207 Lincoln Street in Columbia, South Carolina, the home of Mary Crouch. The warrant directed the seizure of "... chemicals, laboratory equipment, and other paraphernalia, which are used in the illegal manufacture of methamphetamines in violation of 21 U.S.C. § 841(a)(1)."

During the course of the search, agents discovered a number of letters written by each of the appellants to the other. Letters received by Gary Crouch were located in a desk drawer, and those received by Mary Crouch were found in her purse. In both cases, the letters were within the premises subject to search under the warrant and were in envelopes which had already been opened. The agents examined the contents of these letters and found that they contained information concerning the manufacture of methamphetamine, including a partial formula for that substance. Such information was relevant to the charge that appellants were manufacturing methamphetamines, and the letters were seized as evidence.

Defendants unsuccessfully moved to suppress these letters at trial. They take the position that *Marron v. United States*, 275 U.S. 192, 48 S.Ct. 74, 72 L.Ed. 231 (1927), forbade the seizure of paper writings under a search warrant for paraphernalia as being beyond the description of the warrant, and that the seizure was not justified under the plain view doctrine. Because we find the seizure of the letters to have been proper under the plain view doctrine, we need not determine whether they come under the rule in *Marron*.

The application of the plain view doctrine to the facts of this case is clear. The agents were legally on the premises pursuant to a search warrant, the validity of which is not contested. That the letters were discovered inadvertently is adequately demonstrated by the absence of any reference to them in the affidavit for the search warrant, and by Agent Shumard's testimony that the officers did not enter upon the search with the expectation of finding such letters. Furthermore, the incriminating nature of the letters was immediately apparent to the agents. While there was nothing incriminating about the envelopes in which the letters were originally discovered, the agents acted within the scope of the search warrant in removing the letters from those envelopes to search for the chemicals and paraphernalia named in the warrant. The writings thus exposed to their view were clearly and immediately incriminating.

We attach no significance to the fact that some cursory reading of the letters was necessary in order to establish their nature. In *United States v. Ochs*, 595 F.2d 1247 (2d Cir. 1979), Judge Friendly noted that "[a] number of courts, including this one, have upheld without much discussion the seizure of documents during an otherwise valid search as in 'plain view' notwithstanding the fact that some perusal, generally fairly brief, of the documents was clearly necessary in order for the police to perceive the relevance of the document to crime." 595 F.2d at 1257, note 8. In that case, the Second Circuit upheld the plain view seizure of certain index cards which in fact were loansharking records, regardless of the fact that police were obliged to take note of their contents before their incriminating nature became apparent. Similarly, in *Mapp v. Warden*, 531 F.2d 1167 (2d Cir. 1976), on facts nearly indistinguishable from those here, the same circuit held that certain rent receipts were properly seized as in plain view even though their incriminating nature was only apparent after police noticed a suspicious name on them. The court stated that "... it would be some-

---

**1.** Gary Crouch was convicted by a jury. Mary Crouch waived a jury trial and was found guilty by the court on the same stipulated record.

what absurd to require an investigator to be oblivious to that which would be apparent to anyone else with normal powers of observation." 531 F.2d at 1172.

We have noted with approval the rule in *Ochs* and *Mapp*, supra, that the brief perusal of an item does not render its incriminating nature any the less immediately apparent.[2] In *United States v. Phillips*, 593 F.2d 553 (4th Cir. 1978), we held that police engaged in the execution of certain arrest warrants acted properly in seizing three address books. In two such incidents, officers came upon closed books and, upon opening them and discovering lists of names and addresses, seized them as evidence of a drug conspiracy. While the nature of the books' contents was unknown to the officers before such perusal, we held that the items were properly seized as in plain view.[3]

In this case, the agents read a number of letters revealed to them in the course of their search. While such perusal was necessary to determine the letters' incriminating nature, it revealed no more than would have been evident "to anyone else with normal powers of observation." Thus, we find the letters to have been immediately incriminating and properly subject to seizure.

Accordingly, the judgment of the district court is

*AFFIRMED.*[4]

---

**2.** *United States v. Presler*, 610 F.2d 1206, 1211 (4th Cir. 1978). In *Presler* we did not agree with the rationale upon which the *Ochs* court justified the initial intrusion into a briefcase in which the index cards were found. This criticism, however, was limited in scope and did not extend to the latter case's analysis of an officer's right to read documents in order to determine their nature.

**3.** See also *United States v. Haynie, et al.*, 637 F.2d 227 (4th Cir. 1980) (notebooks discovered following hot pursuit entry).

**4.** On facts similar to those before us, we held in *United States v. Avery*, 447 F.2d 978 (4th Cir. 1971), that the plain view doctrine applied to a map of a bank, which apparently required explanation to identify it as the robbed premises, seized in execution of a search warrant apparently issued in aid of a charge of bank robbery which described the article searched for as money.