No. 81–5009. CROUCH ET AL. *v.* UNITED STATES. C. A. 4th Cir. Certiorari denied.

JUSTICE WHITE, with whom JUSTICE BRENNAN joins, dissenting.

This case raises the question of how "plain" objects in "plain view" must be in order to justify a warrantless search.

Specifically, it raises the question whether documents that must be read before their incriminating nature becomes evident are in plain view.

Petitioners are Mary Crouch and her son, Gary. On July 3, 1978, Gary Crouch was released for a 3-day furlough from Goodman Correctional Institute, where he was an inmate. Prior to his release, agents of the Drug Enforcement Administration had received information that indicated that Gary and Mary Crouch might be engaged in the manufacture of methamphetamine.[1] On July 3, agents obtained a warrant authorizing a search of the Crouch residence for "chemicals, laboratory equipment, and other paraphernalia, which are used in the illegal manufacture of methamphetamines in violation of 21 U. S. C. § 841(a)(1)." The warrant was executed on the afternoon of July 6.[2] The officers found chemicals, laboratory equipment, and empty gelatin capsules, but no methamphetamine. During the course of the search, agents discovered, in a drawer of a desk, a bundle of letters in open envelopes addressed to Gary at the state penitentiary from Mary. The agents removed the letters, examined their contents and found that they contained information concerning the manufacture of methamphetamine. Subsequently, the agents found another batch of letters, from Gary to Mary, in Mary's purse (the purse does not seem to have been in her possession). These letters contained additional incriminating evidence. Both sets of letters were seized as evidence.

---

[1] The information was to the effect that petitioners had ordered laboratory equipment and precursor chemicals that could be used to manufacture methamphetamine.

[2] On July 6, prior to execution of the warrant the DEA agents submitted an addendum to the affidavit in support of the search warrant. That addendum contained information concerning the activities of petitioners since July 3. These activities included visits to the public library to consult chemical reference books and the photocopying of some information from those books. The Federal Magistrate does not seem to have taken any additional action in response to the addendum.

Petitioners unsuccessfully moved to suppress the letters at trial. Both were convicted of attempting to manufacture methamphetamine and of conspiring to manufacture and distribute that substance.

Petitioners appealed the failure to suppress the letters to the Court of Appeals for the Fourth Circuit. That court held the seizure of the letters to have been proper under the plain-view doctrine. 648 F. 2d 932 (1981). It found that the agents acted within the scope of the search warrant in removing the letters from the envelopes to search for the chemicals and paraphernalia named in the warrant. The writings were thereby exposed and, the court concluded, they were "clearly and immediately incriminating." By this, however, the court did not mean that it was not necessary to read the letters in order to establish their incriminating nature. Rather, it held that the "brief perusal" of an item does not render its incriminating nature any the less immediately apparent. *Id.*, at 933.

Although the Solicitor General argues in his response to the petition for certiorari that the search/reading of the letters was within the scope of the term "paraphernalia" as used in the warrant, the Court of Appeals did not rely on this reasoning. I find this argument sufficiently strained that I would not accept it without further development in the lower courts.[3] Therefore, the case, as it comes here, presents only

---

[3] Petitioners argue that the letters should be suppressed under *Marron* v. *United States*, 275 U. S. 192 (1927), in which the Court held that a warrant authorizing the seizure of "intoxicating liquors and articles for their manufacture" did not authorize the seizure of ledgers and bills found during the search. *Id.*, at 193. The Solicitor General responds that this case is distinguishable from *Marron* on the ground that the term "paraphernalia," as used in the warrant here, was correctly interpreted by the officers to include the formula necessary to synthesize the drug from precursor chemicals. The officers had reason to believe, and had informed the Magistrate, that the petitioners had photocopied chemical information at the library. The warrant, therefore, could reasonably be interpreted to cover documents. Obviously, this argument relies on the relevance of the July 6

the question of whether a warrantless reading of documents is permissible under the plain-view doctrine; this is the basis upon which the Court of Appeals approved of the search.

Regardless of other disputes as to the scope of the plain-view exception to the warrant requirement, see *Coolidge* v. *New Hampshire*, 403 U. S. 443, 510 (1971) (WHITE, J., concurring and dissenting), it is common ground that the doctrine may justify the search and seizure of items only if the incriminating character of the items is immediately apparent:

> "Of course, the extension of the original justification is legitimate only where it is immediately apparent to the police that they have evidence before them; the 'plain view' doctrine may not be used to extend a general exploratory search from one object to another until something incriminating at last emerges." *Id.*, at 466 (plurality opinion).

Since *Coolidge*, this Court has not had occasion to develop the limits of the concept "immediately apparent." In the absence of authoritative direction from this Court, a number of Courts of Appeals have held that a plain-view seizure of certain documents is permissible even though their incriminating nature is not apparent absent some reading of their contents. *United States* v. *Ochs*, 595 F. 2d 1247 (CA2 1979) (loansharking records contained on loose ledger sheets and index cards); *United States* v. *Pugh*, 566 F. 2d 626 (CA8 1977) (stationery containing drug weight and price quotations, and a calendar book containing a log of drug distributions); *United States* v. *Gargotto*, 476 F. 2d 1009 (CA6 1973) (betting records); *United States* v. *Damitz*, 495 F. 2d 50 (CA9 1974) (notebook used for recording weights of marihuana bricks); *United States* v. *Smith*, 462 F. 2d 456 (CA8 1972)

---

addendum to the earlier affidavit. As the case comes here, however, it is not clear what purpose this addendum was designed to serve or whether it can even be relied upon to interpret the scope of a warrant issued—and not subsequently changed—prior to its submission to the Magistrate.

(lease); *United States* v. *Maude,* 156 U. S. App. D. C. 378, 481 F. 2d 1062 (1973) (identification cards). Although in each of these cases the incriminating character of the evidence was a function of the written message on the object, there are obvious differences in the quality of the perusal required to perceive that character. Some writings may be so obviously incriminating on their face that even a casual glance would reveal this character; others may require extensive reading. I do not believe that any of these cases went as far as the lower court here: permitting perusal of personal letters under the plain-view doctrine.

To extend, by means of the plain-view doctrine, a search authorized by a warrant to the reading of personal papers not included within the terms of that warrant raises extraordinarily important questions. One of the historical purposes of the Fourth Amendment was to bar the indiscriminate search/reading of personal papers under the authority of general warrants. *Marcus* v. *Search Warrant,* 367 U. S. 717, 724–729 (1961). To include perusal of letters or documents enclosed in envelopes within the plain-view exception to the warrant requirement may threaten to expand the bounds of legitimate search warrants and legitimate warrantless searches so far as to authorize in effect general searches. Furthermore, petitioners strongly urge the analogy between the facts of this case and those of *Walter* v. *United States,* 447 U. S. 649 (1980). *Walter* held unconstitutional the unauthorized viewing by the police of films properly in their possession. Exposure of the contents of the film, which we held to require previous judicial authorization despite the presence of probable cause, is not very different from exposure of the written contents of the letters here—an exposure not even supported by probable cause. Cf. *Stanley* v. *Georgia,* 394 U. S. 557, 569 (1969) (Stewart, J., joined by BRENNAN and WHITE, JJ., concurring in result).

At the very least, this case raises important questions that should be settled, and I would grant the petition and set the case for plenary consideration.