665 P.2d 1151
**STATE of New Mexico,
Plaintiff-Appellee,**

v.

**Jim DOBBS, Defendant-Appellant.**

No. 5802.

Court of Appeals of New Mexico.

March 10, 1983.

Certiorari Quashed June 15, 1983.

Morris Stagner, Clovis, Winston Roberts-Hohl, Santa Fe, for defendant-appellant.

Paul G. Bardacke, Atty. Gen., Barbara F. Green, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

OPINION

BIVINS, Judge.

Shortly after midnight on August 1, 1981 Sheila Snipes, age 20, returned home from a date. Sheila's seventeen-year-old brother, Scottie, was at the house at that time. Their parents, however, were away. Soon after her arrival Sheila heard a rattling sound and then Scottie yelling, " '[T]here is a man in the house.' " The intruder advanced toward Sheila and Scottie who were then in the kitchen. He wore dark clothes, a ski mask and socks covering both hands. Sheila described what occurred: "He started walking toward us and told us he was going to kill us." He repeated this three or four times in a disguised, muffled voice before Scottie tackled him. During the struggle Scottie pushed the man back against a fireplace built with jagged stone, and the intruder struck Sheila, who had attempted to aid her brother. She noticed that one of defendant's socks had come off revealing his hand. Later, a sock not belonging to any member of the Snipes household would be found in the area of the struggle. During the struggle Scottie observed a bare hand in his face. It was the left hand and Scottie bit down so hard on one of the middle fingers that he had blood in his mouth. Scottie then hit the man in the face. As the intruder left he stumbled over a table and two chairs. Sheila went to a neighbor's house for help and to call the police. While ringing the neighbor's doorbell Sheila saw the masked intruder running down the street.

A teenage girl who lived several houses from the Snipes observed from her window a white or light-colored El Camino take off in a hurry. She gave this information to the police after they arrived.

Earlier in the evening of July 31, 1981 Sheila and her date had gone to defendant's trailer at the suggestion of the date who was a friend of defendant. Sheila had never met defendant before that time. While there Sheila did not observe any injuries on defendant's hands or face. As Sheila and

her date were leaving she noticed three vehicles parked outside defendant's trailer, one of which was an El Camino. She recalled how it had been parked at that time. After the incident at the Snipes' residence, Sheila accompanied the police to defendant's trailer where she again noticed the same El Camino, but this time parked differently.

Following the match in descriptions of the El Camino, the police went to defendant's trailer. They found defendant wearing shorts and exhibiting injuries closely matching those described by Scottie. Defendant was arrested and a search warrant obtained. The warrant particularized the following objects: one ski mask, red in color with white trim, one man's blue sock, blood or blood stains, clothing fiber and transfer evidence.

During their search of the trailer, a rubber "penis-type vibrator" (vibrator) was found under the bed in the master bedroom. It was not wrapped or enclosed. This item was seized as evidence. In addition the police seized a 1979 edition of the Clovis City Directory, three sheets of paper with handwritten lists of female first-names and abbreviated telephone numbers, a fourth sheet with handwritten names of female movie stars and celebrities, and an additional sheet from a note pad with female first-names and abbreviated telephone numbers. The directory gives the surname, address, spouses' first names, first names and years of birth of children as well as activities in which children participate, i.e., school, clubs, etc. Opposite the names of families with females born between 1963 and 1974 handwritten notations appeared in the form of pluses, minuses and horseshoe symbols. Neither the vibrator nor the written material was listed in the search warrant. One of the officers conducting the search, Robert Littlejohn, testified that, prior to the investigation involving the Snipes residence, he had received information from an informant that defendant had been making home video pornographic movies with young girls and that a vibrator had been used to excite the females. Another officer, Lyle Stevens, noticed the name "Sheila" on one of the three handwritten sheets with an abbreviated phone number opposite. He checked the directory and that number corresponded to the Snipes' number. Opposite the name "Snipes" in the directory was one of the horseshoe shaped symbols with a line drawn through it.

Because Officer Stevens had earlier investigated a rape in which the assailant wore a ski mask, he checked the directory and noted the name of the rape victim marked with a plus.

Defendant was subsequently charged with criminal sexual penetration in the second degree, contrary to § 30–9–11 B(5), N.M.S.A.1978, and aggravated burglary, contrary to § 30–16–4 B and 30–16–4 C, N.M.S.A.1978. These charges were in connection with the rape. Defendant was acquitted of these charges. He was also charged with aggravated burglary in connection with the Snipes incident, contrary to § 30–16–4C, N.M.S.A.1978, and five separate counts of contributing to the delinquency of a minor, contrary to § 30–6–3, N.M.S.A.1978. Defendant was found guilty on all these charges and from the verdicts and judgment he appeals, raising ten issues.

## I. Search and Seizure

Defendant moved unsuccessfully to suppress the vibrator, lists of names and city directory. He claimed at trial as he does here that those items should have been suppressed because: (1) none of the items were listed in the search warrant; (2) none were related to the offense of aggravated burglary under investigation; and (3) perusal of the written material is forbidden by the Fourth Amendment. The State counters by arguing that the items were properly seized under the "plain view" doctrine.

■ In reviewing the propriety of the seizure we may consider facts developed not only at the suppression hearing, but also at the trial. *State v. Martinez,* 94 N.M. 436, 612 P.2d 228, *cert. denied,* 449 U.S. 959, 101 S.Ct. 371, 66 L.Ed.2d 226 (1980).

■ We start with the principle stated in *Marron v. United States,* 275 U.S. 192, 48 S.Ct. 74, 72 L.Ed. 231 (1927), that, "[t]he requirement that warrants shall particularly describe the things to be seized makes general searches under them impossible and prevents the seizure of one thing under a warrant describing another. As to what is to be taken, nothing is left to the discretion of the officer executing the warrant." *Id.* at 196, 48 S.Ct. at 76. If applied literally this language would resolve the matter, because neither the vibrator nor the written matter was described in the warrant. Since *Marron,* however, special exceptions have evolved which permit warrantless seizures of evidence. The United States Supreme Court has recognized that under certain circumstances items in plain view may be seized without a warrant. *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). So has this State. *State v. Ruffino,* 94 N.M. 500, 612 P.2d 1311 (1980); *Rodriquez v. State,* 91 N.M. 700, 580 P.2d 126 (1978). In order for the seizure to come within the plain view doctrine certain criteria must be met. First, there must have been a prior valid intrusion; second, the discovery of evidence in plain view must be inadvertent; third, the incriminating nature of the things seized must be immediately apparent to the officers. *Coolidge,* 403 U.S. at 466, 91 S.Ct. at 2038; *State v. Luna,* 93 N.M. 773, 606 P.2d 183 (1980).

The officers in this case were lawfully on the premises pursuant to a search warrant, the validity of which is not contested. Hence, there was a prior valid intrusion as to the general area. *United States v. Crouch,* 648 F.2d 932 (4th Cir.1981). There was also a lawful intrusion with respect to the specific areas where officers discovered the warrantless items. Officer Littlejohn found the vibrator under the bed. His intrusion into this area came within the scope of the warrant, since he could logically have expected to find targeted items there, i.e., ski mask or sock. The same is true with respect to the written matter. The warrant listed blood and blood stains as well as transfer evidence, i.e., hair, fiber, etc. During the search Officer Stevens looked through papers piled on a bar-type counter which separated the kitchen from the living room and noticed the open directory with markings and the handwritten lists of names. It was reasonable to believe blood or transfer evidence would be found in this area. Thus, his search through papers on the counter fell within the scope of the warrant.

That the vibrator and written material were inadvertently discovered is adequately demonstrated by the fact that the warrant did not describe those items and by the testimony of the officers conducting the search. *See Crouch,* 648 F.2d at 933.

■ The incriminating nature of the vibrator was immediately apparent to Officer Littlejohn. As noted, he knew of allegations made by an informant that defendant had filmed pornographic movies involving use of a vibrator. The incriminating nature of the item seized need not relate to the crime under investigation; it must relate to some criminal activity of which the officer is aware. *United States v. Spencer,* 684 F.2d 220 (2nd Cir.1982); *State v. Bell,* 90 N.M. 134, 560 P.2d 925 (1977).

■ The written matter presents a more difficult problem. Officer Stevens testified at the suppression hearing:

During our search, there was a bar-type affair between the living room and kitchen area, which, I guess, was designed to be like a dining room table. We were looking through everything in the trailer, including the papers there, and as I turned over a group of papers, I found an open City Directory, I believe a 1978 edition of the Clovis City Residential Directory. I was struck immediately by the fact that there were various markings and notations, little scribblings and some type of signs or designations next to a number, and by a number, I mean upwards to—it's difficult to estimate, 50 or 70 of those notations on one page. At the same time, immediately next to the open City Directory was a list of approximately 5 pages of listings of first names of women, and next to them was what

appeared to be an abbreviated phone number. One of the pages, as noted there, had the name in the upper—I believe the upper right-hand corner, the name Sheila, S-h-e-i-l-a, and the numbers 2–1290. Using the phone book that Mr. Dobbs had, * * * next to his phone, * * * I looked up the number of the Snipes residence, and noted that that was the number of the residence of Sheila Snipes and her parents, 762–1290.

Thus, it is apparent that the incriminating nature of this evidence required more than a glance, as was the case with the vibrator. At the same time that Officer Stevens saw the markings in the directory, he noticed the name "Sheila" on one of the handwritten sheets. Because the investigation in progress involved a "Sheila" (Snipes), a reasonable suspicion arose which caused him to cross check the number opposite that name with Sheila Snipes' telephone number in the phone book. The numbers corresponded. At this point suspicion became probable cause to believe that the written material was evidence related to the burglary. See 2 W.R. Lafave, Search and Seizure, § 4.11(c) at 173 (1978). A reasonable suspicion of specific criminal activity is different from only a suspicion that evidence may prove incriminating to a defendant in some unknown way. State v. Turkal, 93 N.M. 248, 251, 599 P.2d 1045 (1979).

Coolidge cautions that a seizure in reliance upon the plain view doctrine "is legitimate only where it is immediately apparent to the police that they have evidence before them; the 'plain view' doctrine may not be used to extend a general exploratory search from one object to another until something incriminating at last emerges." 403 U.S. at 466, 91 S.Ct. at 2038. The application of the plain view doctrine to the perusal of written matter which is presented by this case has not been addressed by either the United States Supreme Court or the appellate courts of this state. Cf. Turkal, 93 N.M. 248, 599 P.2d 1045 (recordings of incriminating matter on cassette tapes). It has, however, been considered by other courts.

The United States Supreme Court did have the opportunity to consider the issue but denied certiorari in Crouch v. United States, 454 U.S. 952, 102 S.Ct. 491, 70 L.Ed.2d 259 (1981), with two justices dissenting. In the dissent, Justice White framed the precise question:

This case raises the question of how "plain" objects in "plain view" must be in order to justify a warrantless search. Specifically, it raises the question whether documents that must be read before their incriminating nature becomes evident are in plain view.

454 U.S. at 952, 102 S.Ct. at 491.

In United States v. Crouch, 648 F.2d 932 (4th Cir.1981), the Fourth Circuit refused to suppress letters written by the defendants to each other. Both were convicted of attempting to manufacture methamphetamine and of conspiracy to manufacture and distribute that substance. The agents obtained a warrant authorizing a search for chemicals, laboratory equipment and other paraphernalia. During the search the officers discovered a bundle of letters in open envelopes addressed to Gary Crouch at the state penitentiary from Mary Crouch. The officers read the letters and found they contained information concerning the manufacture of methamphetamine. Later, letters constituting additional incriminating evidence from Gary to Mary were found in the latter's purse. The circuit court held the seizure of these letters to have been proper under the plain view doctrine. It held that "the brief perusal of an item does not render its incriminating nature any the less immediately apparent." 648 F.2d at 934.

United States v. Crouch, 648 F.2d 932, cited with approval United States v. Ochs, 595 F.2d 1247 (2d Cir.1979), which upheld plain view seizure of index cards which in fact were loan-sharking records even though police had to examine the contents before their incriminating nature became apparent.

In Mapp v. Warden, 531 F.2d 1167 (2d Cir.1976), the court held that although the warrant only authorized seizure of narcot-

ics, certain rent receipts were properly seized as in plain view, because the police noticed a suspicious name on them. In *Ochs* the court distinguishes the *Coolidge* warning of going from one object to another until something incriminating emerges on the basis that the "police * * * advanced from incriminating object to incriminating object." 595 F.2d at 1258.

The search warrant in *United States v. Damitz,* 495 F.2d 50 (9th Cir.1974), authorized seizure of marijuana and paraphernalia for packaging. The officers also seized a notebook found on a counter next to scales. The notebook contained numbers which at trial corresponded closely with the weight of each marijuana brick. *See also, United States v. Smith,* 462 F.2d 456 (8th Cir.1972); *United States v. Maude,* 481 F.2d 1062 (D.C. Cir.1973); *United States v. Sedillo,* 496 F.2d 151 (9th Cir.), *cert. denied,* 419 U.S. 947, 95 S.Ct. 211, 42 L.Ed.2d 168 (1974).

Defendant here relies on *United States v. Wright,* 667 F.2d 793 (9th Cir.1982), to support his position. In *Wright* a federal agent investigating an alleged federal firearm violation, and armed with a search warrant for a driver's license, found a small black ledger. Not finding the license in it, the officer gave the ledger to another officer, a state narcotic's investigator, who concluded it contained narcotics notations. The court held that the ledger should have been suppressed. *Wright* is distinguishable. When the federal agent found the ledger, he was justified in determining whether it contained the license which was the subject of the warrant. Nothing about the ledger indicated that it contained evidence of a crime, whereas here the name "Sheila," which was immediately noticed, did justify further examination. In *Wright* the federal officer gave the ledger to another officer, and it was this officer who ascertained the incriminating nature. Here Officer Stevens, who was investigating the Snipes burglary, upon brief perusal, was able to immediately make the connection after matching the telephone numbers. As Officer Stevens testified, "this struck us immediately that this might show some design, intent * * *."

We do not have to go as far as *Crouch* in upholding the seizure of the written matter under the plain view doctrine. In *Crouch* the Fourth Circuit upheld the reading of letters removed from open envelopes. When Officer Stevens noticed the markings and a name and phone number identical to that of the victim of the crimes under investigation, the incriminating nature of the evidence became immediately apparent. *Cf. Turkal,* 93 N.M. 248, 599 P.2d 1045 (incriminating nature became apparent only after officers listened to cassette tapes).

■ Even if the written matter should have been suppressed, its admission into evidence was nevertheless harmless. The standard for constitutional harmless error is clearly set forth in *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). If a reasonable possibility exists that the evidence complained of contributed to the conviction, the State has the burden of proving beyond a reasonable doubt that the error was harmless. *See State v. Trujillo,* 95 N.M. 535, 624 P.2d 44 (1981); *State v. Bell,* 90 N.M. 160, 560 P.2d 951 (Ct.App. 1977). From a review of the record we hold that the admission of the written matter, if error, was constitutionally harmless.

■ The seizure of the vibrator and the written matter did not violate defendant's Fourth Amendment rights.

## II. Claimed Trial Errors

*Admission of vibrator otherwise objectionable*

In addition to his Fourth Amendment objection to the admission of the vibrator, defendant also objected on the grounds that it was immaterial and irrelevant, and its inflammatory nature outweighed any probative value.

There is no contention that the vibrator was not connected with defendant. Officer Littlejohn said he found it under the bed at defendant's trailer. Defendant admitted the vibrator was his but said it was in a cabinet.

While there was no evidence indicating the vibrator was used in connection with the charges, this does not foreclose relevancy. See definition of "relevant evidence," N.M.R.Evid. 401, N.M.S.A.1978.

Of the five contributing charges, three involved encouraging minors to participate in pornographic films and two involved encouraging minors to engage in sexual intercourse with defendant. That there was evidence to support these charges is not questioned. Defendant showed pornographic films to two boys, and defendant was an actor in one of them. He also showed a pornographic film to two of the girls. Defendant was known as "Captain Orgasm." He suggested to two of the girls that they become prostitutes. Defendant had a movie camera set up to photograph his bed so that, "in case some of these young girls tried to say that he raped them, he would have this as proof that he did not."

Defendant denied all contributing activities with the girls. His possession of the vibrator tended to make it more probable than not that defendant did what the girls said he did. It was relevant to the preparation and intent of defendant even though there was no evidence that, in fact, the vibrator was used. *State v. Hardison,* 81 N.M. 430, 467 P.2d 1002 (Ct.App.1970); *see also State v. Everitt,* 80 N.M. 41, 450 P.2d 927 (Ct.App.1969). The State had the burden of proving defendant acted intentionally. Defendant's intent was a material issue, to which the vibrator was relevant. Based on a review of the record the probative value of this evidence was not substantially outweighed by any danger of unfair prejudice. Admissibility being discretionary with the trial court, the case will be reversed only on a showing of abuse of that discretion. *State v. Bell,* 90 N.M. 160, 560 P.2d 951 (Ct.App.1977). No abuse has been shown.

Even if the admission into evidence of the vibrator constituted error, it was harmless error. In this case the only reference during the trial to the vibrator was by Officer Littlejohn and defendant as noted above. There is no indication that any mention was made of it during closing argument. For error by the trial court to be considered harmless, there must be: 1) substantial evidence to support the conviction without reference to the improperly admitted evidence; 2) such a disproportionate volume of permissible evidence that, in comparison, the amount of improper evidence will appear so miniscule that it could not have contributed to the conviction; and 3) no substantial evidence to discredit the State's testimony. *State v. Moore,* 94 N.M. 503, 612 P.2d 1314 (1980).

If it was error to admit the vibrator, it was harmless. The admission of the vibrator did not deprive defendant of a fair trial. We would note that defendant was acquitted of two of the more serious charges, criminal sexual penetration and one of the counts of aggravated burglary.

*Non-expert opinions*

Defendant argues the trial court erred in permitting lay witnesses to identify controlled substances. As part of the State's case against defendant on the charges of contributing to the delinquency of a minor, several teenaged girls testified that defendant had given them either marijuana or cocaine.

Prior to trial defendant filed a motion in limine to prohibit any of these lay witnesses from expressing an opinion about the identity of the controlled substances absent a foundation that the witness was qualified. The trial court denied the motion. The State argues in its brief that since defendant did not renew his objections at the time the proof was offered or ask for a directed verdict with respect to any of the contributing to delinquency counts, defendant is now precluded from raising the point. The State's argument has no merit. The motion in limine sufficiently alerted the trial court.

Here we are concerned with contributing to the delinquency of a minor which "consists of any person committing any act * * * which * * * tends to cause or *encourage* the delinquency of any person under the age of eighteen years." Section 30–6–3. (Emphasis added.) Even if the

substance was not cocaine or marijuana, if the defendant offered it to the minors, as they claim, he did, and identified it as an illegal substance, this could encourage or tend to encourage the delinquency of a minor. *See State v. Favela,* 91 N.M. 476, 576 P.2d 282 (1978).

◼ As to marijuana the specific question raised here was recently decided by this Court in *State v. Cortez,* 99 N.M. 727, 663 P.2d 703 (Ct.App.1982), *rev'd in part,* ___ N.M. ___, 667 P.2d 963 (1983). We held in *Cortez* that lay opinion as to identification of marijuana was admissible and that the qualifications of the witness went to the weight and not the admissibility.

### Failure to specify dates

Counts III through VII involved "contributing" with each count relating to a different minor female. Two of the counts alleged the commission of an act or omission of the performance of a duty to have occurred in "May and/or June and/or July, 1981," while the other three counts alleged "June and/or July, 1981."

Defendant filed a motion under N.M.R. Crim.P. 9, N.M.S.A.1978 (1980 Repl. Pamph.), to compel the State to particularize the charges. Defendant claimed then, as he does now, that absent knowledge of the facts and circumstances, he was unable to prepare his defense. The trial court denied the motion; however, the State agreed to make its files available to defendant. At trial the exact dates on which defendant was alleged to have committed acts amounting to causing or encouraging delinquency could only be estimated.

◼ Every accused has the right to be informed of the crime with which he is charged in sufficient detail to enable him to prepare his defense. *State v. Lott,* 73 N.M. 280, 387 P.2d 855 (1963).

A criminal information must contain the "essential facts" of the offense. N.M.R. Crim.P. 5(c), N.M.S.A.1978 (1980 Repl. Pamph.). But N.M.R.Crim.P. 7(a), N.M.S. A.1978 (1980 Repl.Pamph.), provides that an information shall not be deemed invalid, nor shall the trial, judgment or other proceedings be affected because of any defect, error, omission, imperfection or repugnancy which does not prejudice the substantial rights of the defendant upon the merits.

◼ Defendant contends his rights were substantially affected and cites *State v. Foster,* 87 N.M. 155, 530 P.2d 949 (Ct.App. 1974), which held void an information which failed to give defendant notice of the charges against him. *Foster* is distinguishable. The *Foster* court reasoned that the conviction could not stand where charges against the defendant failed to specify a date and at trial the evidence showed that acts amounting to the same offense were committed on three separate dates, because evidence of one crime was being used to prove another crime and evidence inadmissible to prove one crime was admitted to prove another. Here, in contrast to *Foster,* the criminal information did contain a time frame as well as the identity of the minor to whose delinquency defendant was said to have contributed. There was no problem in this case, as existed in *Foster,* with defendant knowing the crime for which he was convicted.

We hold that defendant was not prejudiced. Moreover, defendant had access to the State's files. *See State v. Hicks,* 89 N.M. 568, 555 P.2d 689 (1976).

### The "Sign-In" Sheets

◼ As part of his alibi defense, defendant called Mr. Berry, a C.P.A., through whom defendant attempted to offer "sign-in sheets at the Farwell Country Club". These sheets show who was at the Country Club on a given day. Defendant's name appeared on some of the sheets. Defendant intended to use these sign-in sheets to corroborate his testimony as to his whereabouts at the time of the alleged crimes.

The State objected to the admission of the sheets on the ground that the defense had not informed the State that the sheets would be offered as required by N.M.R. Crim.P. 28(a), N.M.S.A.1978 (1980 Repl. Pamph.). The defendant countered saying that an investigator for the district attor-

ney knew of the sheets six months before trial.

During the discussion between the trial court and counsel, the court confirmed that the defense had not intended to offer the sheets until that time. According to defendant's counsel, it was only when the district attorney inquired about them on cross-examination that defendant felt compelled to offer the exhibit so as not to give the appearance of concealing evidence from the jury. Actually, the defense, in response to a question from the court about introducing the exhibits themselves, said, "[a]s to introducing them into evidence, I think they are too voluminous, and I think we can accomplish the same testimony through witnesses * * *." Defendant's counsel changed his mind and offered the exhibit. The trial court ruled that Criminal Rule 28 controlled and disallowed the introduction. The court in so ruling allowed witnesses to refer to the sheets, and the transcript reflects this was done.

Criminal Rule 28(a) requires that within a prescribed period of time defendant "shall disclose or make available to the state" books, papers, documents, photographs, tangible objects, or copies or portions thereof which are in the possession, custody or control of the defendant and which he intends to introduce in evidence at trial. We are not concerned about whether defendant had possession, custody or control of the sign-in sheets; no issue is raised as to that part of the rule.

The trial court did not err in refusing to admit the sign-in sheets. N.M.R.Crim.P. 27, 28 and 30, N.M.S.A.1978 (1980 Repl. Pamph.), must be read together. Rule 27 imposes a duty on the State to disclose evidence. Rule 28 imposes the same duty with respect to defendant. Rule 30 makes these duties continuing and authorizes the trial court, among other things, to prohibit a party from introducing evidence which was not disclosed.

Defendant has shown no abuse of discretion by the trial court in disallowing the sign-in sheets. The court allowed reference to the sheets. Further, the sheets were cumulative evidence. *See State v. Quintana,* 86 N.M. 666, 526 P.2d 808 (Ct.App.1974).

*Non-unanimous verdict*

Defendant challenges the verdict forms claiming they permitted convictions by a non-unanimous jury. For each count of the "contributing" charges the jury was provided with a set of verdicts. They could find defendant either "guilty" or "not guilty" by signing the appropriate form. The defendant points out that this makes it impossible to tell on what basis the jury found defendant guilty. As an example, he points to the instructions on each count of "contributing" which, in the alternative, permit the jury to find defendant guilty of multiple wrongful acts. The jury could, as to one count, find defendant guilty if they found defendant gave a minor marijuana. Using the same instruction, a guilty verdict could be reached if the jury found defendant encouraged the minor to participate in the making of a pornographic film. As we understand defendant's argument, without separate sets of verdict forms for each such element, there is no way to tell if, as to any one count, three jurors found defendant guilty of giving alcohol to the minor, four found him guilty of providing marijuana, and five found as to pornographic movies. The composite would be unanimous, but there would be no unanimity.

A verdict in a criminal case must be unanimous. N.M. Const., Art. II, § 12, N.M.S.A.1978; N.M.R.Crim.P. 44(a), N.M.S.A.1978 (1980 Repl.Pamph.). In giving the instructions on "contributing" the trial court followed U.J.I.Crim. 6.10, N.M.S.A. 1978, setting out, as noted, alternative acts or omissions. Defendant's objection did not relate to the instructions, but to the verdict forms. We assume that defendant is claiming there should have been separate sets of verdict forms for each act or omission which would require a unanimous verdict as to that particular act or omission. This approach resolves defendant's problem, but in this case where there were five separate counts of "contributing" involving five different minors, and as to each count, multiple acts or omissions, it would perhaps be

preferable to add a cautionary instruction that the jury's vote must be unanimous as to at least one act or omission before there can be a conviction. To follow defendant's approach would flood the jury with numerous forms of verdict which could confuse them.

In this case the jury was instructed that their verdict must be unanimous. They were also instructed as to the forms of verdict, "guilty" or "not guilty," and directed that when they had agreed upon one verdict as to a particular charge, that form was the only one to be signed.

While it would be advisable in cases involving multiple alternative elements, as here, to have a cautionary instruction, we decline to speculate about whether the jury reached a non-unanimous verdict. There is no indication that they did. The same question was raised in *State v. Utter*, 92 N.M. 83, 582 P.2d 1296 (Ct.App.1978), under similar circumstances. This Court refused to look behind the verdict when there was no reason to do so. *State v. Utter* is controlling.

*Definition of "pornographic film"*

Three of the "contributing" instructions told the jury they could find defendant guilty if he encouraged the minor "to participate in the making of a pornographic film." Defendant argues that there was no testimony nor instruction which defines a "pornographic film." We are asked to reverse since the jury was not instructed on an essential element of the crime of "contributing." This point is without merit. Defendant did not preserve error by making a timely objection. N.M.R. Crim.P. 41(d), N.M.S.A.1978. Additionally, failure to instruct on a definition or amplification of the essential element of a crime is not error. *State v. Stephens*, 93 N.M. 458, 601 P.2d 428 (1979); *State v. Padilla*, 90 N.M. 481, 565 P.2d 352 (Ct.App.1977).

*Jury selection*

Defendant argues that four of the jurors selected should have been excused for cause. Mr. Figueroa was employed by the brother-in-law of Bob Snipes (father of Sheila and Scottie). Mr. Van Soelen's daughters attended Yucca School, and he knew some of the witnesses and one of the alleged victims. Mr. Hodges was a neighbor of the Snipes. He had heard about the incident at the Snipes' home and knew some of the witnesses. Mrs. Hazelton raised her hand when defense counsel asked on voir dire whether any jurors thought defendant must have done something or he would not be here. Defendant contends that he used peremptory challenges to strike jurors who should have been excused for cause and, thus, did not have peremptory challenges available to strike jurors who could not be challenged for cause. *See State v. Martinez*, 95 N.M. 445, 623 P.2d 565 (1981).

An accused is entitled to trial by an impartial jury. N.M. Const. Art. II § 14, N.M.S.A.1978. An impartial jury means a jury where each and every one of the twelve is totally free from any partiality whatsoever. *State v. McFall*, 67 N.M. 260, 354 P.2d 547 (1960).

Even though Mr. Van Soelen knew the family of one of the minor victims and had met or was acquainted with several witnesses, the record reflects that he would not be affected. He so stated, and defense counsel did not pursue it further. The same is true of Mr. Hodges. He had heard about the incident at the Snipes' home through friends, knew Mr. Snipes, and knew some of the witnesses. Defense counsel did question Mr. Hodges concerning his ability to be impartial, to which Mr. Hodges responded, "I think so." He was not tested further. Mr. Figueroa was questioned by defense counsel concerning his employment with Mr. Snipes' brother-in-law, and after clarifying the relationship, this prospective juror was not questioned further nor asked if the relationship would affect his ability to be impartial. The panel as a whole was asked that question, and there was no negative response. After Mrs. Hazelton raised her hand in response to the question as to whether any juror felt defendant must have done something or he would not be here, defense counsel received a promise from her and one other juror, Mr. Leomazzi, that

they would follow the instructions given by the court. That ended the inquiry.

■ The trial court refused to excuse these jurors for cause. The trial court has wide discretion, and its decisions will not be disturbed absent manifest error or clear abuse of discretion. *State v. Martinez,* 95 N.M. 445, 623 P.2d 565. Defendant has not shown any abuse of discretion. We recognize that a juror's affirmance of impartiality is not conclusive. *Alvarez v. State,* 92 N.M. 44, 582 P.2d 816 (1978). If there was a genuine concern about any of these jurors, then an effort should have been made to elicit more information than appears in this record. *State v. Pace,* 80 N.M. 364, 456 P.2d 197 (1969).

### *Positioning of Deputy Sheriff*

The deputy sheriff was present in the courtroom at the request of the trial court. *See State v. Martinez,* 97 N.M. 540, 641 P.2d 1087 (Ct.App.1982). The deputy sat behind the defendant because of the position of the blackboard and the crowd in the courtroom. The matter was called to the court's attention after both sides had rested and the jury was excused awaiting the court's instructions. Defense counsel requested that the deputy "be positioned someplace rather than right behind the defendant." The trial court acknowledged the validity of defense counsel's request, and presumably the deputy sat elsewhere during the reading of the instructions and closing arguments.

■ Defendant states in his brief that an objection had been made earlier to the officer's presence, but no record was made of that objection. Defendant's counsel is charged with the duty of making certain that all matters necessary for review become part of the record. *State v. Richter,* 93 N.M. 55, 596 P.2d 268 (Ct.App.1979).

■ When the matter was brought to the trial court's attention, as indicated by the record, the trial was essentially over. The court agreed with counsel's request. There is nothing to indicate that the deputy did not reposition himself elsewhere for the remainder of the trial. We find no error under this point.

### *Cumulative error*

■ Pointing to the claimed errors raised, defendant argues that their combination resulted in an unfair trial. As support he relies on *State v. Vallejos,* 86 N.M. 39, 519 P.2d 135 (Ct.App.1974), in which it was said, "An accumulation of irregularities, each of which, in itself, might be deemed harmless may, in the aggregate, show the absence of a fair trial." 86 N.M. at 43. Having found no error, cumulative error is not available.

Further, from a review of the record we find that defendant did receive a fair trial.

### III. Conclusion

There being no reversible error nor cumulative harmless error, the judgment is affirmed.

IT IS SO ORDERED.

WALTERS, C.J., and WOOD, J., concur.