Victor F. Battaglia and Robert D. Goldberg of Biggs & Battaglia, Wilmington, Del., for defendant.

**UNITED STATES of America, Plaintiff,**

v.

**Anderson J. COLEMAN, Defendant.**

**Crim. No. 85–72–JRR.**

United States District Court,
D. Delaware.

April 18, 1986.

ROTH, District Judge.

Defendant Anderson J. Coleman, a retired Revenue Officer for the IRS, on trial on charges of perjury, obstruction of justice, embezzlement, and conflict of interest, moved at trial to suppress certain documents seized during a search of his residence. The search was pursuant to a warrant but the documents in question were not described in the warrant. The Court has ruled that the documents are admissible. This Memorandum Opinion sets forth the reasons for which the Court so holds.

· The search of defendant's residence occurred on November 21, 1985.[1] The property to be seized was described in general terms as bank and financial records, sums of cash of more than $1,000, and telephone and client records of defendant's tax consulting business. At the time of the search a briefcase was found beside defendant's desk. A cursory examination of the papers in the brief case indicated that at least some of them were protected by attorney/client privilege. The briefcase was then sealed and held by the Government until the contents could be reviewed by the Court *in camera.*

The present motion involved five of the documents in the briefcase, none of which falls under the attorney/client privilege. All five were found in a manila folder, labeled "John Belote." Defendant, while he was a Revenue Officer, had handled the account of a delinquent taxpayer, named John Belote. John Belote was not, however, a client of defendant's tax consulting service.

Three of the documents are clearly official IRS records and as such are the property of the IRS. Two of these are Form MAR–828, History Sheets, recording defendant's contacts with John Belote between September 28 and October 26, 1982. The third is Form 433–D, Installment Agreement, executed by John Belote on September 28, 1982. For defendant to have these records in his possession after his retirement from the IRS is evidence, immediately perceptible by an IRS investigator, of violation of 18 U.S.C. § 641.[2] The other two documents are notes written on plain lined paper. A cursory examination is sufficient to indicate that these two sheets are records of defendant's contacts with John Belote, on January 11, 1983, and June 6, 1984, in efforts to collect taxes. The contents are similar to those of the Form MAR–828, History Sheets. Most probably, therefore, they are also part of the official IRS record on John Belote.

In fact, the IRS investigators were aware that defendant, in other files he maintained as a Revenue Officer on delinquent taxpayers, had originally made history notes on notebook paper and later transferred these notes to Form MAR–828. Moreover, it was immediately evident from the notes on the two documents in question that they concerned efforts by defendant to collect monies from John Belote during a period when defendant was not assigned to collection activity on Mr. Belote's accounts. Records documenting contacts by defendant with Belote to collect taxes during periods when the Belote file was not assigned to defendant would be evidence of violation of 18 U.S.C. § 654, Embezzlement by government employee, as well as violation of § 641.

The Government contends that these five documents, although not covered by the search warrant, were properly seized under the "plain view" exception to the warrant requirement. In essence, the "plain view" doctrine permits property to be seized and to be admissible in evidence, even though seizure of that property⊙ is not authorized under the search warrant, as long as it is established that the law enforcement authorities were lawfully on the premises, the discovery of the property was inadvertent and the incriminating nature of the item was immediately apparent. *United States v. Scarfo,* 685 F.2d 842, 845 (3d Cir.1982), *cert. denied,* 459 U.S. 1170, 103 S.Ct. 815, 74 L.Ed.2d 1014 (1983).

To demonstrate the applicability of the "plain view" doctrine in this case, the Government presented the testimony of Inspector Samuel Ricco, the IRS agent heading up the investigation of defendant. Inspector Ricco led the search of defendant's residence and was present at the *in camera* inspection of the documents found in the briefcase. Inspector Ricco also pre-

1. The validity of the warrant, authorizing the search, was upheld by this Court in its Memorandum Opinion of March 19, 1986.

2. 18 U.S.C. § 641 *Public money, property or records.* Whoever embezzles, steals, purloins or knowingly converts to his use ... any record of the United States or of any department or agency thereof....

pared the affidavit in support of the search warrant.

Inspector Ricco testified that at the time of the search, he was aware that defendant claimed to have lent money to John Belote. "Personal notes" of defendant were specifically covered by the search warrant. Inspector Ricco would, therefore, have had reason to believe documents covered by the warrant might be in such a file. The dates on the documents in the Belote file were also significant to Inspector Ricco from his investigation of defendant and of defendant's handling of the Belote delinquent tax account. Furthermore, just looking at the documents was sufficient to indicate that they appeared to be about taxes. Inspector Ricco went on to state that at the time of the search he had no evidence that any original tax documents or IRS records were located in defendant's residence. That such documents might be found was in his mind no more than a possibility.[3]

The defendant concedes in his letter-memorandum of March 14, 1986, that the Government agents had the right to open the briefcase and look at its contents. He contends, however, that they did not have the right to look through the documents in the "Belote" file.[4] In view of Inspector Ricco's knowledge that Belote loan documents might be in the file, we hold that it was proper to examine the contents of the file. Indeed, even if John Belote had not borrowed money from defendant, in a search such as this one, where a variety of documents were identified in the warrant to be seized, it was proper for the investigators to peruse briefly all documents located on the premises to determine whether or not they fell within the scope of the warrant.[5] *United States v. Slocum,* 708

F.2d 587, 604 (11th Cir.1983); *United States v. Christine,* 687 F.2d 749 (3d Cir. 1982); *United States v. Ochs,* 595 F.2d 1247, 1257 n. 8 (2d Cir.1979) *cert. denied* 444 U.S. 955, 100 S.Ct. 435, 62 L.Ed.2d 328, *reh. denied* 444 U.S. 1027, 100 S.Ct. 695, 62 L.Ed.2d 663 (1980). The fact that the officers, performing the search, must take note of the contents of documents before their incriminating nature is apparent, does not preclude the applicability of the "plain view" exception. *United States v. Heldt,* 668 F.2d 1238, 1267 (D.C.Cir.1981) *cert. denied* 456 U.S. 926, 102 S.Ct. 1971, 72 L.Ed.2d 440 (1982), *United States v. Crouch,* 648 F.2d 932, 933 (4th Cir.1981) *cert. denied* 454 U.S. 952, 102 S.Ct. 491, 70 L.Ed.2d 259 (1981).

> The incriminating character limitation necessarily permits a brief perusal of documents in plain view in order to determine whether probable cause exists for their seizure under the warrant.... If the course of that perusal, their otherwise incriminating character becomes obvious, they may be seized. *United States v. Heldt,* 668 F.2d at 1267.

Moreover, the fact that the incriminating nature of the documents was immediately apparent to Inspector Ricco only because of his special knowledge as an IRS employee and his familiarity with the activities of defendant as a result of his ten month investigation does not detract from his quick appreciation of the significance of the documents.

> [W]as the evidence incriminating on its face? In answering this question, it is critical to remember that a law enforcement official making evaluations is not bound to the objective knowledge of a reasonable person. Such an agent may

---

**3.** The Government withdrew its application for admission of three documents from the Belote file, dated February 27, 1985, about which Inspector Ricco did not testify concerning inadvertence in discovery.

**4.** The review of the Belote file was actually, of course, done *in camera* after the Court determined that the contents were not privileged and that inspection of the documents in the file was appropriate. However, if the question of attor-

ney/client privilege had not arisen, the file would have been examined by the Government agents at the time of the search.

**5.** In fact, as the Government points out on its letter memorandum of March 11, 1986, the "Belote" file contained an unrelated document concerning another taxpayer, Steve Patmiou. The label on the file could not be relied upon, therefore, to describe its contents.

rely on his special experience and knowledge in determining whether, for example, reasonable suspicion or probable cause exists.

*United States v. Slocum*, 708 F.2d at 605.

It is because, as demonstrated above, the five documents in question satisfied all the requirements for admission under the "plain view" exception to the warrant requirement that the ruling was made at trial to admit them into evidence.